## In re MARCUS.

(Circuit Court of Appeals, Second Circuit. February 10, 1913.)

No. 165.

**1.** BANKRUPTCY (§ 408*)—DISCHARGE—OPPOSITION—TRANSFER OR CONCEALMENT WITH INTENT TO HINDER, DELAY, OR DEFRAUD CREDITORS.

A bankrupt within four months prior to bankruptcy paid $4,500 to his wife in settlement of a debt for money borrowed from her, from which she returned $1,250 to him to enable him to go to Europe to raise further capital to put into the business. *Held*, that such transfer did not constitute a transfer or concealment with intent to hinder, delay, or defraud creditors, and was therefore insufficient to bar the bankrupt's discharge on that ground.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

**2.** BANKRUPTCY (§ 408*)—DISCHARGE—FALSE OATH.

That a bankrupt in the course of an extended examination made a misstatement concerning his want of knowledge of his insolvency at a particular time was insufficient to warrant a denial of a discharge on the ground that he made a false oath.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

**3.** BANKRUPTCY (§ 409*)—DISCHARGE—FAILURE TO KEEP BOOKS.

A bankrupt's stock consisted in part of a stock of goods which he had brought over from a former business, and, the partners in the new business being unable to agree on the discount to be made from the cost price, the items of such stock were valued at cost and set down in lead pencil in the inventory, so that by making a proper discount from the items so entered the exact status of the firm could be determined at any particular time. *Held*, that the failure to take stock and inventory the value of all the assets at the end of each year did not show that the firm's books were improperly kept, for the purpose of concealing its true financial condition, so as to bar the bankrupt's discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

**4.** BANKRUPTCY (§ 409*)—DISCHARGE—FAILURE TO KEEP BOOKS.

Where the books of a firm were kept by a competent bookkeeper, who was not interfered with by either member of the firm, and there was no showing of an intent on the part of the bankrupt to conceal his financial condition, the fact that the books were inaccurate on account of misunderstanding, inadvertence, or mistakes was not ground for the denial of a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

In the matter of bankruptcy proceedings of Morris Marcus. From an order granting the bankrupt a discharge (192 Fed. 743), Thomas F. Molloy and another, as administrators, and certain other creditors, appeal. Affirmed.

Noble & Camp, of New York City (W. Cleveland Runyon, of New York City, of counsel), for appellants.

Myers & Goldsmith, of New York City (E. J. Myers, of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. There were three specifications of objection to discharge.

[1] 1. It was contended that Marcus had within four months prior to bankruptcy paid $4,500 to his wife, who had thereafter given $1,250 of that sum to the bankrupt to enable him to go to Europe and see friends there, with a view to obtaining further capital to put into the business. The special master held that, so far as the evidence showed, the payment to the wife was for borrowed money due to her; and that, although the payment might have been preferential, it did not constitute a transfer or concealment with intent to hinder, delay, or defraud creditors. What she might do with the money after she received it in payment of the debt to her was, of course, her own affair. The District Judge confirmed the special master's report, and we find no sufficient basis in the record for holding that Marcus concealed assets from the trustees.

[2] 2. It is contended that Marcus made a false oath in this proceeding. The District Judge has discussed this objection at some length, and we concur in his disposition of it. The particular answer relied upon was to a question directed to his financial condition at a particular time. The condition of insolvency is a complex one, and we would hestitate to hold a man guilty of false swearing, because in the course of an extended examination he made some misstatement of his want of knowledge of his insolvency at a particular time. In the present case it is difficult to say that the bankrupt testified with any positiveness as to his knowledge of insolvency at a particular time and then denied it. We are not satisfied from the evidence that the bankrupt swore falsely, and then corrected it by making a true statement. We see no reason to reverse the decision below on this objection.

[3] 3. The last objection is that the bankrupt, or rather his firm, with intent to conceal its financial condition, failed to keep books of account or records from which such condition might be ascertained. There seems to be no criticism of the general manner of keeping the books. The bookkeeper was a competent man, and did his work faithfully. The criticism stated in the brief is that no such inventory was ever made as would enable the condition of the firm to be shown accurately. The evidence shows that what is meant by this statement merely is that there was not each year a stock-taking and inventory on which the merchandise in hand was stated not at cost, but at its

value at the time the annual inventory was prepared. It appears, however, that when the firm was organized, about five years before, Marcus contributed a stock of goods which he brought over from his former business. The items of this stock, valued at cost, were all set down in the books, but these entries were made in pencil, because there was some dispute between the partners as to what discount there should be made from the cost price. From the beginning a merchandise account was kept, and the evidence indicates that from the original pencil entries and the merchandise account it was possible at any time to prepare an inventory which would show with substantial accuracy what goods the firm had on hand. This would not show the "exact status" of the firm, as appellant calls it, because it would not give the value of the merchandise at the time the inventory was made. But we do not understand that the bankrupt act requires a new inventory to be taken every time there is some fluctuation in the actual selling value of the stock on hand, so that the revised estimates of value may be from time to time recorded on the face of the books. It seems to us that the books of this firm were so kept as to show what goods they had on hand, stated at their cost value, and that a person familiar with the particular trade could estimate with reasonable accuracy what discount there should be made from cost, in order to ascertain the financial condition.

[4] But, even if the financial condition could not be accurately determined from the books, it does not follow that the objection should be sustained. The firm employed a thoroughly competent bookkeeper, and left the books in his charge without themselves interfering with the manner in which he performed his skilled duties. There is nothing to show that either member of the firm was an experienced bookkeeper, or that either of them supposed that the man they employed for the purpose was not doing his work properly. The act does not refuse discharge because the books have been so kept as to make it difficult, if not impossible, to get an exact financial condition without further examination. The failure to keep sufficient books of account must have been with intent on the part of the bankrupt to conceal his financial condition. Such books may be inaccurate on account of misunderstanding, inadvertence, mistakes, and other reasons consistent with a desire that they should truthfully show the real conditions. There is no evidence in this record which would warrant a finding that the books were kept as they were—whether complete or incomplete—with intent on the part of Marcus to conceal his financial condition.

The order of the District Court is affirmed.