## FEDER v. GOETZ.

(Circuit Court of Appeals, Second Circuit. February 18, 1920.)

No. 62.

1. **Bankruptcy ⬅446, 467—Distinction between appeal and petition to revise.**
Appeal brings up questions of both law and fact, but a petition to revise brings up questions of law only.

2. **Bankruptcy ⬅444—Time for appealing and petitioning to revise.**
While the Bankruptcy Act (Comp. St. §§ 9585–9656) fixes the time for appeal, the time for filing a petition to revise is not fixed, although in the Second circuit it must be filed and served within 10 days after entry of the order sought to be revised.

3. **Bankruptcy ⬅440—Petition to revise does not extend to appealable orders.**
Appealable orders cannot be reviewed by petition to revise; hence, as Bankruptcy Act, § 25a, subd. 2 (Comp. St. § 9609), allows an appeal from an order granting or denying discharge, a petition to revise cannot be used to review the same.

4. **Bankruptcy ⬅455—Order granting or denying discharge may be reviewed by appeal.**
Under Bankruptcy Act, § 25a, subd. 2 (Comp. St. § 9609), an order granting or denying discharge may be reviewed by appeal.

5. **Statutes ⬅209—Presumption that word has same meaning each time used.**
While there is a prima facie presumption that the meaning of a word repeatedly used in a statute is identical in all places, unless there is something to show that another meaning is intended, the presumption is never deemed conclusive.

6. **Bankruptcy ⬅407(3)—Discharge not denied because bankrupt made general assignment for creditors; "transfer intended to hinder, delay, or defraud creditors."**
While a general assignment for benefit of creditors is an act of bankruptcy, and is a "transfer intended to hinder, delay, or defraud creditors," within Bankruptcy Act, § 67e (Comp. St. § 9651), such a transfer, where not made with any improper intent, is no ground, in view of the history of bankruptcy legislation, for denying discharge, on the theory that it was a transfer to hinder or delay creditors, within section 14b, subd. 4 (section 9598).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transfer.]

Petition to Revise and Appeal from Order of the District Court of the United States for the Southern District of New York.

In the matter of Jacob Feder, bankrupt. The order of a referee, recommending discharge be denied, was reversed, and, discharge having been granted, Otto Goetz appeals and petitions to revise. Petition to revise dismissed, and order granting discharge affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Leon Dashew, of New York City (Leo Oppenheimer, of New York City, of counsel), for petitioner.

Marcus Helfand, of New York City, for respondent.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. · [1, 2] An appeal brings up both law and fact, and a petition to review brings up matter of law only. The order involved in this case is one which denied to the bankrupt his discharge, and it was entered on May 28, 1919. The appeal was taken on June 4, 1919, and on the same day the petition to revise was filed. The time for taking an appeal is limited by the Bankruptcy Act (Comp. St. §§ 9585–9656), which, however, contains no express time limit within which a petition to revise must be filed. In re Leterman, Becher & Co., 260 Fed. 544, —— C. C. A. ——. The matter in this circuit is governed by our rule 38 (235 Fed. xi, 148 C. C. A. xi), which declares that petitions to revise must be filed and served within 10 days after the entry of the order sought to be revised.

[3, 4] The question of time does not arise in this case, as both the appeal and the petition to revise were taken in time. The appellant, however, is not entitled to avail himself of both remedies. The revisory jurisdiction does not extend to orders which are appealable. In re Loving, 224 U. S. 183, 32 Sup. Ct. 446, 56 L. Ed. 725. And an order which grants or denies to the bankrupt his discharge is by section 25a, subd. 2 (section 9609), one from which an appeal can be taken. The petition to revise is therefore dismissed, and the case will be decided upon the appeal.

In the case now before the court the referee recommended that the bankrupt's discharge should be denied, on the ground that the assignment amounted to a fraudulent transfer. The District Judge reversed him, and declared that a general assignment per se is not a bar to a discharge. He added that under section·14b, subd. 4, intent to hinder, delay, or defraud creditors must be shown, in addition to the mere act of making a general assignment for the benefit of creditors.

As the bankrupt, proceeding under the law of the state of New York, made a general assignment for the benefit of creditors on May 29, 1918, and a petition in bankruptcy was filed against him on May 31, 1918, which was followed by an adjudication of bankruptcy on June 24, 1918, it is said that no discharge can be granted, and that we must hold that the general assignment worked a transfer of the bankrupt's property and was necessarily made "with intent to hinder, delay or defraud his creditors." Section 3a, subd. 1 (Comp. St. § 9587). There is nothing in the record which discloses that the bankrupt had any such intent as a matter of fact. If he had that intent, it. is because it must be presumed to have existed from the fact that the assignment was made.

[5, 6] Proceedings in bankruptcy are strictly statutory. A discharge can be refused only on grounds specifically mentioned in the Bankruptcy Act.

The first English Bankruptcy Act was passed in 1542 (34 & 35 Henry VIII, c. 4), and it granted no discharge from unpaid debts. A

second act was passed in 1570 (13 Eliz. c. 7), which likewise contained no provision for a discharge, and it was not until the act of 1705 (4 Anne, c. 17) that provision was made in that country for a discharge. For many years, in order that a bankrupt might be entitled to a discharge under the English law, it was necessary that his assets should equal a certain percentage of his debts and that a certain per cent. of his creditors should assent to his discharge.

In the United States the first Bankruptcy Act was passed in 1800, and it followed in its main features and often in its language the English bankruptcy laws, and it provided under certain limitations for a discharge of the bankrupt. 2 Statutes at Large, pp. 19, 30. 31. Discharge was provided for, too, in the second act, passed in 1841. 5 Statutes at Large, pp. 440, 443. The third act, passed in 1867, also provided for a discharge, but still made it very difficult for the discharge to be obtained. 14 Statutes at Large, pp. 517, 531, 532, 533. And see 15 Stat. at Large, p. 227.

The main purpose of the bankruptcy statutes of both countries was to furnish a better protection to creditors, and it was not within the purpose to grant a discharge even to honest debtors. The early Bankruptcy Acts were acts for creditors and against debtors. It is surely a matter of some significance, therefore, that when the United States provided for the discharge of bankrupt debtors an assignment for the benefit of creditors, while in England regarded as an act of bankruptcy, was not considered as morally objectionable and did not prevent a discharge. If Congress intended that an assignment for the benefit of creditors should have a different effect under our system, we are inclined to think that intention would have been clearly indicated.

Under the act of 1867 the grounds for refusing a discharge were collated in ten separate paragraphs. The act of 1898 when it was originally introduced into Congress, specified nine distinct classes of cases in which no discharge was to be granted, and they continued in the bill until its final revision by the conference committee. It provided that the bankrupt should be discharged—

"unless he has  *  *  *  (2) given a preference as herein defined, and within six months prior to the filing of the petition against him, which has not been surrendered to the trustee;  *  *  *  (4) made a transfer of any of his property which any creditor who has proved his claim in the proceedings might, at the time of the filing of the petition, have impeached as fraudulent if he had been a judgment creditor, unless such property shall have been surrendered to the trustee;  *  *  *  or (7) secreted or conveyed any of his property to avoid its being administered in bankruptcy, or any document relating to his property in contemplation of bankruptcy; or (8) transferred any property otherwise than in the ordinary course of his business, in contemplation of bankruptcy.  *  *  *"

As finally adopted there were only two grounds left in the act for denying the discharge. These were: (1) That the bankrupt had committed an offense punishable by imprisonment as provided in the act. (2) That with fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, he had destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained.

The amendment of February 5, 1903 (32 Stat. 797), enlarged the grounds for refusing a discharge, adding the only one which it is now material for us to consider, and which is found in section 14b (section 9598), which reads as follows:

"Or (4) at any time subsequent to the first day of the four months immediately preceding the filing of the petition transferred, removed, destroyed, or concealed, * * * any of his property, with intent to hinder, delay or defraud his creditors. * * *"

And the question which this case presents is whether a general assignment for the benefit of creditors and which gives no preferences must be regarded in law as a transfer made with intent to hinder, delay, or defraud creditors, there being an entire absence of actual fraud.

The English Bankruptcy Act of 1890 enumerates with considerable particularity the grounds for refusing a discharge to the bankrupt, but does not expressly declare that an assignment for the benefit of creditors shall constitute a ground, either for refusing a bankrupt his discharge or for suspending his discharge. The grounds specified may be found in the margin.[1]

The fact that giving "an undue preference to any of the creditors" is specified, while an assignment for benefit of creditors generally and without a preference is not referred to, leads us to infer, there being

---

[1] "(a) That the bankrupt's assets are not of a value equal to ten shillings in the pound on the amount of his unsecured liabilities, unless he satisfies the court that the fact that the assets are not of a value equal to ten shillings in the pound on the amount of his unsecured liabilities has arisen from circumstances for which he cannot justly be held responsible.

"(b) That the bankrupt has omitted to keep such books of account as are usual and proper in the business carried on by him and as sufficiently disclose his business transactions and financial position within the three years immediately preceding his bankruptcy.

"(c) That the bankrupt has continued to trade after knowing himself to be insolvent.

"(d) That the bankrupt has contracted any debt provable in the bankruptcy without having at the time of contracting it any reasonable or probable ground of expectation (proof whereof shall lie on him) of being able to pay it.

"(e) That the bankrupt has failed to account satisfactorily for any loss of assets or for any deficiency of assets to meet his liabilities.

"(f) That the bankrupt has brought on, or contributed to, his bankruptcy by rash and hazardous speculations, or by unjustifiable extravagance in living, or by gambling, or by culpable neglect of his business affairs.

"(g) That the bankrupt has put any of his creditors to unnecessary expense by a frivolous or vexatious defense to any action properly brought against him.

"(h) That the bankrupt has within three months preceding the date of the receiving order incurred unjustifiable expense by bringing a frivolous or vexatious action.

"(i) That the bankrupt has within three months preceding the date of the receiving order, when unable to pay his debts as they become due, given an undue preference to any of his creditors.

"(j) That the bankrupt has within three months preceding the date of the receiving order incurred liabilities with a view of making his assets equal to ten shillings in the pound on the amount of his unsecured liabilities.

"(k) That the bankrupt has on any previous occasion been adjudged bankrupt, or made a composition or arrangement with his creditors.

"(l) That the bankrupt has been guilty of any fraud or fraudulent breach of trust."

no decision to the contrary in England which has come to our attention, that the law of that country remains to-day as it was said to be by Judge Cadwalader in Barnes v. Rettew, 2 Fed. Cas. 868, No. 1,019 (1871), that an assignment for the benefit of creditors did not bar a discharge.

In Barnes v. Rettew, supra, there may be found an exceedingly interesting exposition of the early bankruptcy law of England. Judge Cadwalader, in the course of his opinion in that case, referring to the law in 1799 and 1803, when all bankruptcies in England were in form involuntary, but in fact for the most part were quite the reverse, says of an assignment for the benefit of creditors that it was in itself only constructively fraudulent, and that it was, in the absence of actual fraud, no objection to the bankrupt obtaining a discharge from his debts, in the proper subsequent stage of the proceedings. Then in 1825, when the voluntary system of bankruptcy was introduced, the above principle was still adhered to; Judge Cadwalader declaring that the cases are numerous in which bankrupts obtained their discharge notwithstanding the fact that they had made assignments for the benefit of creditors within six months; the statute providing that an assignment should not be regarded as an act of bankruptcy unless a commission should issue within that period. He says:

"In England an assignment like that in question, though an act of bankruptcy, has been considered morally unobjectionable, and sometimes an honorable act, as affording to any creditor an option to proceed in bankruptcy, or to all the creditors a right of obtaining a distribution without any bankruptcy" —citing 1 Christ. Bankr. Law (2d Ed.) 187–189.

The actual question in Barnes v. Rettew was not the question presented in the case at bar, as to whether an assignment for the benefit of all the creditors would bar a discharge. It was whether an assignment was an act of bankruptcy. While the question now before the court was not decided in the case referred to, the statements of Judge Cadwalader serve to indicate the opinion entertained in England upon the subject. The bankruptcy law of the United States had its sources in the bankruptcy law of England.

It has been held that the words as used in this connection include any conveyance, whether fraudulent at common law or not, if it is one which contravenes the provisions and objects of the bankruptcy law. Rumsey & Sikemier Co. v. Novelty & Machine Mfg. Co. (D. C.) 99 Fed. 699; Black on Bankruptcy, § 82. The theory is that the transfer amounts to a fraud upon the act, and is therefore to be considered as having been made with the intent to hinder, delay, or defraud creditors, even though there is an entire absence of any actual intention to defraud. But a different view of the matter has also been taken, and it has been declared that Congress intended the words "to hinder, delay or defraud creditors," when used in this connection, to have the same construction and effect as was given them under the statute of Elizabeth and at the common law. Lansing Boiler Works v. Ryerson, 128 Fed. 701, 63 C. C. A. 253. This court is not now concerned, and does not inquire, as to which of these theories is right.

The words appear again, as we have seen, in section 14b, subd. 4, in connection with the matter of discharge. They also appear in section 67e (section 9651) in still another connection. But it does not follow that words used in one section of an act always mean the same thing when used in some other section of the act and in a different connection. It is true that there is a prima facie presumption that the meaning of a word repeatedly used in a statute is identical in all places, unless there is something to show that another meaning is intended. Courtauld v. Legh, L. R. 4 Exch. 126; State v. Knowles, 90 Md. 654, 45 Atl. 877, 49 L. R. A. 695; Postal Tel.-Cable Co. v. Farmville & R. Co., 96 Va. 661, 32 S. E. 468. And see United States v. Central Pacific R. R. Co., 118 U. S. 235, 240, 6 Sup. Ct. 1038, 30 L. Ed. 173. This presumption is, however, never deemed conclusive, and is generally considered of little weight. Reg. v. Kent, 2 Q. B. 692; Angell v. Angell, 9 Q. B. 353; State v. Knowles, supra; Henry v. Trustees, 48 Ohio St. 671, 30 N. E. 1122; 26 Am. & Eng. Encyc. of Law (2d Ed.) 610, 611.

There is no rule of construction which prevents us from holding that the word "intent" in the expression "with intent to hinder, delay or defraud creditors" means actual intent in the fourteenth section, even though it were well established that constructive intent is sufficient in the third section. The question as to the meaning of the word "intent" as used in section 14 is not settled by the decisions. In Collier on Bankruptcy (11th Ed. 1917) the following statement is made concerning this subject:

"A question which may arise under this clause is whether a previous general assignment is a bar to a discharge. That such an assignment is a transfer is elementary; that it amounts to an intent to hinder or delay creditors is now thought well settled. It would seem to follow that if within the interdicted period, a general assignment is a sufficient objection to a discharge. The question is fraught with large results as one of the defects in the administration of the law rests on the proneness of failing debtors to assign under the state systems, thus accomplishing troublesome conflicts of jurisdiction and often mulcting their estates in double fees. An authoritative ruling that general assignments are sufficiently fraudulent to bar a discharge would thus solve many problems. Debtors desiring discharges would not then care to assign."

We appreciate the statement above made, and it might have been wise if Congress had provided in the act that assignments under state laws should prevent a discharge. But with the wisdom of such a provision Congress alone is the final judge. It is not the province of this court to write into the act what Congress may have left out of it. Loveland on Bankruptcy (4th Ed. 1912), vol. 2, § 731, referring to the provision now under consideration, says:

"This is substantially the phraseology used in the first act of bankruptcy. * * * This provision makes conveyances which by the common law and the statute of Elizabeth were held void, because fraudulent, a ground for refusing a discharge to a bankrupt. A mere constructive fraud is not sufficient to defeat a discharge. The test is the presence or absence of real fraud. * * * An assignment for the benefit of creditors is not in itself fraudulent."

The question hardly seems to be a doubtful one in this circuit, in view of the decision of this court in Re Julius Bros., 217 Fed. 3, 133 C. C. A. 328, L. R. A. 1915C, 89. In that case, it is true, the

transfer was not by way of an assignment for the benefit of creditors. The transfer was by means of a sale. The members of an insolvent mercantile partnership, within four months prior to the bankruptcy proceedings, transferred all their property for its full value to a corporation organized by friends for the purpose of making the purchase and the placing of the proceeds in the hands of an attorney, to be used in discharging their indebtedness as far as possible without preference, by payment of his pro rata share to each creditor who would accept the same in composition of his claim. This court held that this transfer was not made with intent to hinder, delay, or defraud creditors, and therefore did not bar the right of the partners to a discharge. We said:

"There was no intent to defraud, and no intent to hinder or delay creditors. On the contrary, the intent was to sell the property for full value and use the entire proceeds to discharge as far as possible the obligations of the debtors, without a preference to any one over another."

There was entire absence of fraudulent intent in that case, and entire absence of fraudulent intent in this case. The purpose in both cases was to give the entire estate, and without preferences, to the creditors.

This court, in Re Marcus, 203 Fed. 29, 121 C. C. A. 393, affirmed the action of the District Court in granting a discharge to a bankrupt who within four months prior to bankruptcy transferred to his wife $4,500. This court said:

"The special master held that, so far as the evidence showed, the payment to the wife was for borrowed money due to her, and that, although the payment might have been preferential, it did not constitute a transfer or concealment with intent to hinder, delay, or defraud creditors."

This court, in Richardson v. Germania Bank of the City of New York, 263 Fed. 320, decided at this term, in considering section 67e, which provides that transfers made within four months with intent to hinder, delay, or defraud creditors shall be void, declared that—

"Such transfers are avoided when 'actually fraudulent,' and if made in 'good faith,' though for an antecedent consideration, are valid, even though their effects may be to hinder creditors 'by removing from their reach assets of the debtor.' "

We also said that—

"There is not, and we believe never has been, any rule of law announced dispensing with affirmative preponderating credible evidence establishing as a fact an 'actual' subsisting intent to defraud or unlawfully hinder."

The petitioner relies strongly upon the decision of District Judge Addison Brown in Re Gutwilig (D. C.) 90 Fed. 475 (1898). In that case the court had under consideration a voluntary general assignment for the benefit of creditors, made in conformity with the laws of New York. It was held in effect that such an assignment, made within four months of the adjudication in bankruptcy, is an act of bankruptcy, and a fraud upon the Bankruptcy Act, and voidable. Judge Brown said that a general assignment is fraudulent, not at common law, or under St. 13 Elizabeth, but because it defeats the rights of creditors

264 F.—40

as secured by the Bankruptcy Act. The act of 1867 expressly declared voidable a debtor's transfers made with intent to defeat or delay the provisions of the act; but that had been the long-settled law, and voluntary general assignments had been long held to be acts of bankruptcy, and as such void, without inquiry into the debtor's intent, the intent being conclusively presumed. The act of 1898 contains no similar clause, but there is no doubt as to the general intent of the act. Judge Brown accordingly granted an order restraining the assignee for the benefit of creditors from disposing of the bankrupt's estate. The question whether the bankrupt should be denied his discharge because he had made such an assignment was not before the court and not decided. The order made was brought into this court on petition to revise, in 92 Fed. 337, 34 C. C. A. 377, and was affirmed. In affirming Judge Brown's order, Judge Wallace, speaking for this court, said:

"We entertain no doubt that a voluntary general assignment, with or without preferences, made by an insolvent debtor, within the prescribed four months, is fraudulent, and intended by him to hinder, delay, and defraud creditors, within the meaning of section 67."

The provision of the section referred to was that which declares void transfers made with intent to hinder, delay, or defraud creditors.

In Boese v. King, 108 U. S. 379, 2 Sup. Ct. 765, 27 L. Ed. 760, a divided court held that an assignment for the benefit of creditors, and made for the purpose of securing an equal distribution of the estate among all of the creditors, and without actual fraud, was made without intent to hinder, delay, or defraud creditors, and was valid, except as against proceedings instituted under the Bankrupt Act for the purpose of securing the administration of the property in the bankruptcy court. And in Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165, the court declared that a general assignment for the benefit of creditors, made within four months, "is void as against the trustee in bankruptcy, so far as it interferes with his administering the property assigned." The court in the course of its opinion said:

"The assignment was not illegal. It was permitted by the law of the state, and cannot be taken to have been prohibited by the bankruptcy. law absolutely in every event, whether proceedings were instituted or not. In re Sievers [D. C.] 91 Fed. Rep. 366; In re Romanow [D. C.] 92 Fed. Rep. 510. It had no general fraudulent intent. It was voidable only in case bankruptcy proceedings should be begun. At the time when it was made the institution of such proceedings was uncertain. It seems to us that it would be a hard and subtle construction to say, as seems to have been thought in Bartlett v. Bramhall, 3 Gray [Mass.] 257, 260, that when they were instituted they not only avoided the assignment, but made it illegal by relation back to its date, when, if they had not been started, it would have remained perfectly good. No doubt the corporation had notice of the bankruptcy law, but it could not go into bankruptcy by voluntary petition, and there is no objection to a debtor's distributing his property equally among his creditors of his own motion, if bankruptcy proceedings do not intervene. The view we take is that which has been taken by state decisions with reference to similar questions raised by creditors or under state insolvent laws. Biglow v. Baldwin, 1 Gray [Mass.] 245, 247; White v. Hill, 148 Mass. 396 [19 N. E. 407]; Clark v. Sawyer, 151 Mass. 64 [23 N. E. 726]; Wakeman v. Grover, 4 Paige [N. Y.] 23, 43; s. c., 11 Wend. 187, 226 [25 Am. Dec. 624]. See, also, Mayor v. Hellman, 91 U. S. 496, 500, 501 [23 L. Ed. 377]."

If a discharge is to be refused to a bankrupt because he has made an assignment for the benefit of creditors, he is punished for an act which was not illegal at the time it was done, which was neither malum in se nor malum prohibitum, not being "prohibited by the bankruptcy law absolutely in every event," but "voidable only in case bankruptcy proceedings should be begun"; and as "at the time when it was made the institution of such proceedings was uncertain" it seems to this court a hard and subtle construction to say that such an act, legal when done and morally unobjectionable, shall have the effect of depriving a bankrupt of his discharge in the event of its turning out that bankruptcy proceedings happen to be instituted against him. We will not hold that such a penalty shall be imposed upon the bankrupt, in the absence of a clear provision in the act imposing it upon him.

The order granting the discharge is affirmed.