## In re GOODWINE.

### GOODWINE v. LANE et al.

(Circuit Court of Appeals, Seventh Circuit. February 28, 1924. Rehearing Denied April 10, 1924.)

No. 3271.

1. **Bankruptcy** ⊜⊃415(2)—**Error to refer application for discharge to special master.**

Under Bankruptcy Act, § 14b (Comp. St. § 9598), and General Order in Bankruptcy No. 12, which require an application for discharge to be heard by the judge, but permit its reference to a referee to report the facts it is error to refer an application to a special master.

⊜⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Bankruptcy ☞468—On reversal, appellate court may finally determine question in issue without remanding.**

Under Judicial Code, § 269, as amended (Comp. St. Ann. Supp. 1919, § 1246), where the record on appeal in a bankruptcy matter contains all the evidence, the appellate court may make final disposition of it, instead of remanding for further hearing.

3. **Bankruptcy ☞414(3)—Evidence of concealment held not to authorize denial of discharge.**

Evidence *held* not to authorize denial of discharge on the ground that bankrupt concealed property with intent to defraud his creditors.

Appeal from the District Court of the United States for the Eastern District of Illinois.

In the matter of Wayne Goodwine, bankrupt. From an order denying a discharge, made on objections of A. W. Lane and others, doing business as Lane Bros., Bankers, bankrupt appeals. Reversed.

Samuel Levin, of Chicago, Ill., for appellant.
Wm. M. Acton, of Danville, Ill., for appellees.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Appellant was denied a discharge in bankruptcy because of alleged concealment of property within four months immediately preceding the filing of the petition in bankruptcy, with intent to hinder, delay, and defraud his creditors.

[1] His application for discharge was referred to a special master, who heard the evidence and found adversely to him. This procedure was contrary to the provisions of the Bankruptcy Act, which requires a determination of this issue by the judge or a referee. Bankruptcy Act, § 14b, par. 4 (Comp. St. § 9597); General Orders in Bankruptcy, rule 12. In view of the statute and the rule above referred to, it was error to refer this issue to a special master. Doubtless the rule was promulgated to avoid the costs incident to a reference to a special master and should be enforced for that reason.

[2] This error would result in a reversal with directions to the District Court to either hear and determine the issue, or refer it to the referee as such; but as all testimony is before us, and is not materially in conflict, we feel justified in disposing of the matter finally at this time. Judicial Code, § 269 (Comp. St. Ann. Supp. 1919, § 1246).

[3] An adjudication in bankruptcy occurred on December 10, 1920, a trustee for the estate being named December 23. On October 11, 1920, bankrupt executed and delivered to one McMillin a chattel mortgage for $20,000, which was recorded. There was no consideration for the execution of this mortgage, and bankrupt admits that he owed McMillin nothing. But this mortgage was obviously not fraudulently made to hinder, delay, or defraud creditors. It was executed to prevent one, a judgment creditor, from obtaining an advantage over all of the other creditors. It was in the nature of a voluntary assignment made by the bankrupt to protect all of his creditors.

At a meeting called to discuss his affairs, he listed his debts and his assets, and explained to the creditors that the mortgagee named in the chattel mortgage had been by him selected to protect all of the credi-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tors, who, with one exception, assented to his plan. The judgment creditor, objector herein, refused to join in the proposed settlement, whereupon the chattel mortgage was immediately satisfied and discharged, and shortly thereafter the petition in bankruptcy was filed. Very clearly these facts do not justify a withholding of a discharge on the ground that bankrupt was endeavoring to conceal his assets to defraud his creditors.

Another act of concealment relates to the hiding of two sets of harnesses. The facts are likewise not in dispute, and reflect no discredit upon the bankrupt. On October 7, bankrupt's neighbor lost his barn through a fire. With other property went his harnesses. Discussing the matter with bankrupt as they stood by the ruins, bankrupt offered to sell him two harnesses for $96 and satisfy an indebtedness for hay previously purchased. The offer was accepted. Prior to their delivery to the neighbor, bankrupt placed the harnesses in the barn, where they could not be readily found by the sheriff, when he arrived with an execution upon the judgment. After the sheriff had departed, bankrupt delivered the harnesses to the purchaser. This was not a concealment of assets within the purview of the statute. Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Van Iderstine v. Nat. Discount Co., 227 U. S. 575, 33 Sup. Ct. 343, 57 L. Ed. 652; In re Julius Bros., 217 Fed. 3, 133 C. C. A. 328, L. R. A. 1915C, 89; In re Marcus, 203 Fed. 29, 121 C. C. A. 393; Klein v. Powell, 174 Fed. 640, 98 C. C. A. 394.

As further evidence of bankrupt's good faith, however, it should be added that, when consulting his lawyer in reference to the bankruptcy proceedings, he was advised that this transaction might be declared a preference, and he went to his neighbor, recovered the harnesses, and turned them over to the trustee, who sold them as part of the assets of the bankrupt estate.

It is further urged that bankrupt failed to list as one of his assets an account against his father for the purchase of some corn. What were the facts? Bankrupt was operating 1,050 acres of farm land, and poor crops and a drop in prices caused his financial embarrasment. He was indebted to his father in the sum of $6,000. When the corn was still unhusked, bankrupt told his father that he could get about $1 a bushel at the warehouse for corn, and asked him if he wanted it. His father replied that he did not "know what to do; I expect I ought to buy it." Nothing further was done. No corn was delivered, and no payment was made.

It is finally claimed that bankrupt concealed automobile tires. He had two automobiles, a Ford and a Haynes. One or both of them was constantly in the garage for repair. Needing money, he took the two rear casings from the Ford car and replaced them with inferior casings, directing the garage owner to sell the others and apply the same upon his account, which was done. This was prior to the proceedings in bankruptcy. Under the cases cited this was at most a preference. Bankrupt did the same with the two rear casings on the Haynes car, but these casings were not sold prior to the adjudication in bankruptcy. Bankrupt took the tires to his home, and later turned them over to the trustee, who sold them.

At the time of the adjudication in bankruptcy he did not know that the tires had not been sold. He merely listed the Haynes car, making no mention of the casings. The objections to the application for a discharge should have been overruled, and the discharge granted.

The decree is reversed, with directions to enter an order granting bankrupt a discharge.