### In re RICHARDS.

District Court, D. New Jersey.
March 30, 1934.

Walter S. Keown and William A. Early King, both of Camden, N. J., for exceptant.

Frederick C. Kentz and Jacob R. Mantel, both of Summit, N. J., for bankrupt.

FORMAN, District Judge.

Exceptant is Edward B. Smith & Co., a creditor of the above-named bankrupt. It filed objections to the discharge of the bankrupt, specifying the following grounds:

"1. That said Gordon Richards subsequent to the first day of the four months immediately preceding the filing of the petition in bankruptcy, transferred a property on the 31st day of December, 1931, with intent to hinder, delay or defraud his creditors, and the said property was more particularly described as follows: (Here follows a detailed description of premises known as 601 Third St., Belvidere, New Jersey, consisting of a dwelling house and lots.)

"2. Said Gordon J. Richards concealed or attempted to conceal the transfer of said property in defraud of his creditors."

The issues were referred to the Honorable Charles H. Weelans, referee in bankruptcy, who heard testimony on the same. During the course of the hearing the exceptant asked leave to amend his specifications of objections by adding that the bankrupt had concealed the existence of certain book accounts not set forth in his schedule. The referee, in his report, recites the facts as adduced before him, and finds that the objection concerning the concealment of the book accounts was not sustained in the face of the explanation offered by the bankrupt and in view of the fact that the bankrupt turned over to the trustee records of all of his accounts.

He also rejected the objection raised by the written specifications above set forth and found that the bankrupt was entitled to his discharge.

The referee's finding regarding the book accounts was manifestly correct and will be affirmed without discussion here.

The pith of his finding on the question of the alleged fraudulent transfer of the real estate was based upon the following facts:

The bankrupt owned a dwelling house and lots known as No. 601 Third street, Belvidere, N. J. His father, Herman R. Richards, was the owner of 301 Mill street, a business property, in the same town. Both properties were about identical in value and unencumbered. In March of 1931 the bankrupt found himself financially embarrassed due to speculations in the stock market. He had borrowed considerable money from the Warren County Trust Company, a bank in his town, of which he was a director, a practice, by the way, indulged in only too frequently as contemporaneous events so vividly disclosed during those

times. The bank called upon him to supply additional collateral for his loans, the proceeds of a large portion of which, ironically enough, went through the hands of the exceptant here, for the purpose of purchasing stock.

The bank indicated its willingness to accept a $10,000 mortgage upon the business property belonging to the bankrupt's father, rather than to accept as security the private property of the bankrupt. Accordingly the bankrupt agreed with his father to exchange their respective properties, the estimated values of the same being equal, a fact conceded by the exceptant. Pursuant to this agreement the father conveyed to the bankrupt the business property in March of 1931 and a few days later the bankrupt mortgaged it to the bank. The actual transfer of the private property by the bankrupt to his father was not consummated until December of 1931.

Meanwhile, the exceptant, then a creditor of the bankrupt, had threatened suit and a few days after he had conveyed the property to his father its summons and complaint was served upon him. Judgment was taken against him and on February 13, 1932, he filed his petition in bankruptcy.

The exceptant contends that the delayed transfer by bankrupt to his father was fraudulent, and that he did thereby forfeit his right to a discharge from bankruptcy.

The Bankruptcy Act provides as follows:

"(b) The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest, at such time as will give the trustee or parties in interest a reasonable opportunity to be fully heard; and investigate the merits of the application and discharge the applicant, unless he has * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition, transferred, removed, destroyed, or concealed or permitted to be removed, destroyed, or concealed any of his property, with intent to hinder, delay, or defraud his creditors." Bankruptcy Act § 14b (4), as amended in 1926, 11 USCA § 32 (b) (4).

The bankrupt explained that although his father from time to time requested him to execute his agreement and transfer the private dwelling property to him, negligence upon his part to have the deed drawn, and some tardiness in the office of the lawyer who was to draw the deed, caused the delay. He rather artlessly admitted, also, that he did not hasten to deliver the deed to his father because his "credit standing" would be impaired by the fact that the record would disclose that he had divested himself of the title.

This admission is the only indicium of lack of good faith upon his part, but I am not inclined to feel that it taints the entire transaction. His action here, though not to be commended, was a product of a business world pregnant with a calloused unconsciousness of moral values, and drenched with the sordid atmosphere of the gambling house, rather than the sober influence that should pervade honest business enterprise.

The expression of Judge McDermott in the case of Bailey v. Ross, 53 F.(2d) 783, 784 (10th C. C. A.), seems peculiarly applicable here. In that case the bankrupt owned property to the value of about $2,500. All of it was mortgaged to a local bank to secure indebtedness of $2,200. The bank was about to foreclose. The bankrupt, a farmer, wanted the bank to carry him through another crop, and to advance him more money. Other creditors were pressing him, and the bank was unwilling to carry him further unless he would make a bill of sale to his wife. This the bankrupt did and the bank then took a mortgage from his wife. Judge McDermott, in part, said:

"The appellant contends that the effect of the transfer was to hinder and delay creditors, and that the law imputes the intent from the act. It is very doubtful if this 'transfer' in fact hindered or delayed any creditor; but passing that, the contention is not a sound one. If appellant is correct, a preferential transfer is necessarily a fraudulent one, for its effect is to hinder and delay other creditors. But the Supreme Court of the United States has held otherwise. Dealing with this clause of the Bankruptcy Act, the Supreme Court in Coder v. Arts, 213 U. S. 223, 242, 29 S. Ct. 436, 443, 53 L. Ed. 772, 16 Ann. Cas. 1008, held: 'This form of expression is familiar to the law of fraudulent conveyances, and was used at the common law, and in the statute of Elizabeth, and has always been held to require, in order to invalidate a conveyance, that there shall be actual fraud; and it makes no difference that the conveyance was made upon a valuable consideration, if made for the purpose of hindering, delaying, or defrauding creditors. The question of fraud depends upon the motive. Kerr, Fraud & Mistake, 196, 201. The mere fact that one creditor was preferred over another, or that the conveyance might have the effect to secure one creditor and deprive others of the means of obtaining payment, was not sufficient to

490

avoid a conveyance; but it was uniformly recognized that, acting in good faith, a debtor might thus prefer one or more creditors. Stewart et al. v. Dunham et al., 115 U. S. 61, 5 S. Ct. 1163, 29 L. Ed. 329; Huntley v. Kingman & Co., 152 U. S. 527, 14 S. Ct. 688, 38 L. Ed. 540.' And in the concluding paragraph of the opinion, the court met this case squarely when it held that there was no fraud if the bankrupt in conveying his property 'acted in good faith with a view to preserving his estate, and enabling him to meet his indebtedness.' This decision was followed by Van Iderstine v. Nat. Discount Co., 227 U. S. 575, 33 S. Ct. 343, 57 L. Ed. 652. See, also, In re Goodwine (C. C. A. 7) 298 F. 81; Farmers' Sav. Bank v. Allen (C. C. A. 8) 41 F.(2d) 208; Remington on Bankruptcy, §§ 3312–3317, and cases cited in 11 USCA § 32, notes 261–321."

I must agree with the referee that the conveyance from the bankrupt to his father was made in good faith and that there was an absence of any intent to "hinder, delay, or defraud his creditors."

The finding of the referee that the specifications have not been sustained and that the bankrupt is entitled to his discharge is, therefore, affirmed.