In re HERZOG et al.

No. 289.

Circuit Court of Appeals, Second Circuit.

July 9, 1941.

Sydney Basil Levy, of New York City, for appellant.

Abraham Bisgaier, of New York City (Joseph K. Guerin, of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The referee to whom the trustee's specifications of objection were referred, denied the discharge for the reason that the bankrupts had failed to keep books of account from which their financial condition and business transactions might be ascertained. Upon petition for review the district court reversed the referee's order and granted a discharge to the bankrupts, individually and as copartners. The problem is whether the court was right in deeming the "failure to have been justified under all the circumstances of the case." 11 U.S.C.A. § 32, sub. c(2).

The facts regarding the bankrupts' books are most unusual. Upon the death of their father in 1929, the bankrupts succeeded to his business of selling meats, foods and condiments. They conducted the business as copartners under the name of Columbia Pickle Works. In 1931 they formed a corporation by the name of Columbia Pickle & Food Products, Inc., but never formally transferred to it the partnership assets. However, they thereafter conducted part of their business dealings in the partnership name and part in the corporate name. Most of the purchases were made in the partnership name; sales were billed in the name of the corporation. The partnership bank account, however, was continued in the firm name and all receipts, whether corporate or partnership, were deposited therein. After organization of the corporation, a set of books was opened and kept in the name of the corporation. These books recorded all the transactions of corporation or partnership without segregation and without differentiation between them. A certified public accountant employed by the bankrupts was unable to ascertain from the books which transactions pertained to the corporation and which to the partnership. On March 22,

1939 the partners filed a petition under Chapter XI, 11 U.S.C.A. § 701 et seq.; thereafter they were adjudicated bankrupts. On the same date the corporation filed a similar petition and it was likewise adjudicated bankrupt. The schedules of both partnership and corporation listed the same assets ($5,540.78) and the same liabilities ($31,647.21). Neither partner had any individual creditors.

The referee was of opinion that since it was impossible from the books to ascertain the financial condition and transactions of the partnership as distinguished from those of the corporation, the legal result was the same as if the bankrupts had kept no books at all and consequently they were not entitled to a discharge. The district court reversed the referee's ruling. We think the referee was right.

Although all the business transactions of the bankrupts regarded either as partners or as a corporate entity were entered in the books, these entries do not serve the statutory purpose of preserving records from which their "financial condition and business transactions might be ascertained." The objection is not, as the appellee seems to think, that transactions of the corporation and of the partnership were recorded in the same set of books. That would be unobjectionable if the record differentiated between them. It does not. No one can tell from the books whether the liability to a particular creditor is a debt of the partners or of the corporation, or whether an account receivable is a partnership or corporate asset. Even the manager of the bankrupts' business found it impossible to segregate the creditors or the assets of the partnership from those of the corporation. The prejudice resulting from such confusion is obvious: a creditor who dealt with the bankrupts as partners cannot learn from the books what other persons dealt with them in the same capacity or what assets are available for distribution to partnership creditors. It is true the confusion in the books was not the result of dishonesty. The bankrupts had no intention to conceal anything; they merely failed to realize the necessity of distinguishing between their business activities as partners and as a corporation, although their accountant testified that he had warned them as far back as 1935. Under the statute honesty is not enough. As a condition precedent to obtaining a discharge the bankrupt must either produce such records as are customarily kept by a person doing the same kind of business or must "justify" to the court his failure to produce them. White v. Schoenfeld, 2 Cir., 117 F.2d 131, 132. In the case at bar, the bankrupts offer no excuse except their ignorance of the need to differentiate between corporate and partnership activities, and this excuse is somewhat weakened by the undenied testimony that the accountant gave them warning. We do not think their ignorance and honesty a sufficient justification. Men who do business in two capacities should know that they must keep a record which will show in which capacity they were acting in a given transaction. Without this the record is of no assistance to creditors. In the case of In re Jorey, D.C. S.D. Ohio, Fed.Cas. No. 7,530, the members of a partnership were denied a discharge where the partnership records failed to disclose the state of accounts as between the partners—a deficiency less glaring than a failure, as here, to show partnership liabilities or assets. We are of opinion, therefore, that the bankrupts are not entitled to a discharge.

Order reversed.

CLARK, Circuit Judge (dissenting).

The business here was actually conducted as a single unit; as the auditor says, "As far as I was concerned, there was one identity and that was the corporation." The referee states that there is no contention "that the books did not truly record all the transactions of the consolidated entities." The bankrupts appear to have been simple salesmen, out on their trucks all day long. They left bookkeeping and legal problems to others, presumably more wise —a course which at times at least has served as adequate protection to untutored business folk. In re Marcus, 2 Cir., 203 F. 29; In re Livermore, 2 Cir., 96 F.2d 93; In re Lovich, 2 Cir., 117 F.2d 612, 133 A.L. R. 673. They did keep, or cause to be kept, books honest, but not legally sophisticated. I believe the statute requires no more. Hedges v. Bushnell, 10 Cir., 106 F.2d 979; 1 Moore's Collier on Bankruptcy, 14th Ed. 1940, pars. 14.32, 14.33. They should not be penalized for failing to draw those legal conclusions which the bankruptcy court must—and I believe rather easily can—draw from the facts herein when it settles the bankrupt estate.

The result seems all the more harsh because apparently it stems from a dilemma

engendered by the lawyers. For after the corporation was formed, corporate books were opened listing the various assets and liabilities of the business, including even the bank accounts, and apparently showing the natural intent to transfer the former partnership assets and liabilities to the corporation. True, no formal transfer of the checking account was made; it is this to which the auditor took exception. ("You see, in 1935 I objected seriously to the way the bank account was handled, and I insisted upon a change over to the corporate entity; because that was the way they were operating.") And the parties still continued to receive and pay bills addressed to the firm, though the sales were billed in the name of the corporation. It seems doubtful whether such legal informality was sufficient to overturn the manifest intent to incorporate the business. But when insolvency came, the lawyers, apparently affected by that excess of caution which afflicts our profession, concluded that to be safe not only should the corporation petition, but the individuals should do so also. And there they are.

I would affirm.