## In re SANDOW.

### No. 83015.

District Court, S. D. New York.

Nov. 29, 1944.

Goetz & Midler, of New York City, for objecting creditor.

George W. Wollins, of New York City, for bankrupt.

CLANCY, District Judge.

The discharge of this bankrupt has been allowed by the referee and we are asked to review that decision. The listed debts total $42,000 of which about $15,000 are contingent. He has no assets. He has supplied not one shred of a record of any sort. For a year and a half before December, 1941, so far as we can make out from his examination, he and two associates engaged in the operation of three milk bars. The ownership of each bar was in a separate corporation. In the premises of one corporation the bankrupt actually served the bar and drew a salary of $30 weekly. He was treasurer of the corporation that owned this enterprise and he and one of the two associates we have mentioned owned the stock. He was president of the other two and signed their checks. The stock of these two was intended to be divided equally among the associates but how or to whom or even whether it was

ever issued or whether any corporate meetings were held did not appear because even the corporations' stock and minute books were not available. They were said to be in the office of an attorney who was listed as a creditor for the value of his services. Another lawyer was said to have some checks and some daily receipts of one business. An accountant kept the books of all three corporations.

■ Most of the listed debts are stated to be for loans and for goods sold and delivered. The referee says that a large part of them are for guaranteeing corporation obligations. The bankrupt's testimony on this is not at all clear but we will accept the referee's view. Any doubt about their character is a substantial defect in the record of the bankruptcy proceeding. Re Herzog, 2 Cir., 121 F.2d 581, certiorari denied 315 U.S. 807, 62 S.Ct. 640, 86 L. Ed. 1206. The books of one company and perhaps of all were, early in 1942, in the basement of a store in which one of the corporations earlier operated its business though then it was in his brother's ownership and the bankrupt was employed there. The bankrupt had left them at this store after the corporation had gone out of possession. They were in a box or package and he did not know nor entertain any interest in what books were in the package. He said that two months later a water pipe burst and caused some damage there whereupon the Board of Health ordered a cleaning out of the basement and during this cleaning out the books, whatever they were, disappeared.

■ On this record the referee returned what he described as a finding of fact that the bankrupt's failure to keep books or records is under all the circumstances of this case justified. This might be called a finding of an ultimate fact but on its face it embodies a judgment of the referee and that judgment involved issues of fact and law. We are mindful of General Order 47, 11 U.S.C.A. following section 53. Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975. There is no issue of veracity nor is there any question of fact in this case. The bankrupt was the only witness, if we except a lawyer who appeared to make formal proof, and the referee apparently believed the bankrupt. We accept all of the referee's findings so far as they go. We recognize also the wide discretion vested in the referee. Baily et al. v. Ballance, 4 Cir., 123 F.2d 352. But we think his decision was "so clearly wrong that its decision cannot be justified by the situation and circumstances which must, as matter of law, control the exercise of this discretion." Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 95 F.2d 414, at page 424.

To find the referee's reasons it is necessary to consider his opinion. Therein he stated that "the bankrupt was employed by a corporation conducting a milk bar at a salary of $30 a week and at the same time he owned one-third of the stock in each of two other corporations." He also stated as a fact and apparently took it as a strong argument for his decision that a large part of the bankrupt's listed debts were "the result of guaranteeing for other corporations in which he was an officer or owned stock but in which he did not actively participate in the conduct of the business." Each one except the very last of these statements of the referee is literally true. So much is omitted which must be accepted as established by the bankrupt's testimony—since that is the sole basis in the case for any finding whatever and the referee has apparently accepted it—that the statements amount to a complete misrepresentation of the fact. A reference to this bankrupt as a wage earner is the expression of a too finely focused view of his activities. He is a business man and his business was the financing and operating of milk bars. All of the business men who ventured to deal with the management of these bars insisted on dealing with the individuals and depended on the individuals' credit. They did not regard the bankrupt as a wage earner but as owner and manager just as the bankrupt manifestly regarded himself. They may have indulged the individuals to the extent of routing the merchandise or loans through corporate channels eventually. That does not appear certain as we have said but we accept the referee's view of it. But if they did this it was only after they had secured the personal liability of the individuals with whom they dealt. The bankrupt was thoroughly aware of his position and what his business was. He was president and signed checks for the two corporations that conducted the enterprises to which he did not devote his physical service. As matter of law the enterprises were either partnership in which case he was an owner or corporative in which case he was president. If the latter be the case, the general executive management of the corporation would be his duty

in the absence of an unusual bylaw which has not been suggested. And in the corporations' relations with their creditors it would be immaterial whether or not he performed his duty in fact. It would be strange law that would excuse him here from the responsibility of control which he assumed with his office merely because he failed to perform its duties. He controlled their spending through their check books. He persisted, even in the teeth of the referee's professions of an inability to understand, that each bar was operated by a partnership consisting of himself and his associates. All of the debts were incurred in the management of the lunch bar enterprises. Bankrupt's schedules do not indicate that he incurred any debt through his manner of living or since his milk bar enterprises failed. The creditors naturally are interested in where their supplies, merchandise and loans went and the nature of the listed debts indicates that the considerations for all of them should have gone into the operation of the lunch bars. It is those operations that normally the creditors would be interested to investigate and it is at least those which the statute requires to have established by records.

██ The other findings in the referee's opinion are that the bankrupt had nothing to do with the keeping of the books and records of the corporation because he was not their secretary and was not employed at the place of their businesses. The duty imposed by law on the secretary to keep a corporation's books is a duty to the state and to the stockholders and creditors of the corporation. The Bankruptcy Act § 14, sub. c(2), 11 U.S.C.A. § 32, sub. c(2), neither commands nor invites presentation of corporation records in individual bankruptcy proceedings. Courts and creditors have accepted them, however, when their character is such that they are competent substitutes for the personal records which the statute requires. Whether the bankrupt be an officer or a stockholder is material only to the issue of determining the competence of the corporate records as a substitute for the personal records the statute requires. Matter of Muss, 2 Cir., 100 F.2d 395. The burden of proving their materiality and of producing them is naturally on the bankrupt. White v. Schoenfeld, 2 Cir., 117 F.2d 131. The bankrupt in that case did not own all the stock of one company concerned but his

failure to produce a guarantee of one of the company's obligations was one of the things which the court held sufficient to sustain the referee. Assuming that in this case the corporation records would have provided an acceptable substitute for the personal records of the bankrupt required by the statute, the conclusion of the referee is without support either in fact or in law. The referee excuses the bankrupt from keeping the books. The books were kept and by an accountant. We will assume that he meant to "preserve" the books. The obligation to preserve them was his regardless of his office or stockholding so far as they would be material in this his own bankruptcy proceeding and they were last in the possession of the bankrupt and were abandoned by him. In fact he had so little interest in them that he did not even examine the package in which he says they were bound when they were last delivered to his brother's place of business where he has since been continuously employed. Their existence after the corporation's failure was developed entirely by what was necessarily hearsay since he never examined the package which he said contained them and did not claim personally to have disposed of them or witnessed their disposition. But the referee accepted it so we will make no point of it.

The character and number of this bankrupt's debts demand production of the records intended by the statute to be produced. Klein v. Morris Plan Industrial Bank, 2 Cir., 132 F.2d 809, 144 A.L.R. 1278; Matter of Popik, D.C., 18 F.Supp. 717; White v. Schoenfeld, supra. What would be required of him under the statute by creditors to whom he lent his credit so extensively was something for him to worry about. Karger v. Sandler, 2 Cir., 62 F.2d 80. We can find no case in which a bankrupt in this one's position was not required to submit records to explain his situation and to meet the requirements of the law. The referee is reversed. His dismissal of the second specification of objections is not disturbed because we think he was right in holding the creditor's proof insufficient when he rested. This ruling means that assuming that production of corporation books and records may initially be demanded by an objecting creditor in an individual's proceeding, the burden is on the creditor to prove their competence to supply the requirements of the statute. Discharge is denied.