## In re WARNE, Bankrupt.[*]

### (Circuit Court, E. D. Pennsylvania. April 29, 1882.)

1. DISCHARGE—FRAUD—GIFTS TO WIFE AND DAUGHTER.

Gifts by a bankrupt to his wife and daughter, previous to the bankruptcy, although they may be voidable by his creditors, do not necessarily involve such moral turpitude as would justify the refusal of a discharge.

2. SAME—FAILURE TO RETAKE AND DELIVER SUCH PROPERTY.

As between the bankrupt and his wife and daughter their ownership of such property is unquestionable, and his failure to retake possession and deliver such property to the assignee is not a valid objection to his discharge.

3. SAME—FALSE STATEMENT.

A false statement made by the bankrupt upon his examination, as to the existence of books of account, will not prevent his discharge if it appears that such statement was against his own interests, and apparently without motive, and the circumstances indicate that it was innocently and not wilfully made.

Appeal from decree of the district court granting a discharge. See report of case, 10 FED. REP. 377.

W. D. Luckenbach, for appellants.

Hon. W. W. Schuyler and Sharp & Alleman, for appellee.

McKENNAN, C. J. The only objections urged against the bankrupt's discharge are:

(1) That he was guilty of fraud in not delivering to his assignee certain personal property claimed by and in the possession of his wife and daughter; and (2) that he wilfully swore falsely touching the keeping of proper books of account in his business.

The first objection is unsustained by evidence which tends to prove fraud within the meaning of that section of the bankrupt act upon which the objection is founded.

The property referred to in the objection was, in part, given by the bankrupt to his daughter, and in part acquired by his wife by purchase from others. But, although the title to the property, of the apparent owners may be voidable by the bankrupt's creditors, through the assignee, as their representative, the transactions in which it

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

originates do not necessarily involve moral turpitude, which must characterize them to justify the denial of a dischàrge, even if they may be considered as comprehended by the terms of the objection here.  *Neal* v. *Clark*, 95 U. S. 704.

But as between the bankrupt and his wife and daughter, their ownership of the property was unquestionable, and he could not, rightfully or legally, disturb it.  Fraud, therefore, cannot be imputed to him because he did not illegally possess himself of property, the ownership of which he could not claim, and deliver it to his assignee.

The second objection is more difficult to deal with.

That the bankrupt swore falsely is incontestable.  In his examination before the register, on the twenty-fifth of May, 1880, he stated that he had not kept any cash-book in his business; that he could not tell by his books what his business expenses were, nor what he took out of his business for the support of his family, nor whether they would show profit or loss.

Thereupon the register reported against his discharge.  The bankrupt supposed that the assignee had taken possession of all his books, but, after the register's report, he made further search and found additional books "in the loft over the hay scales on the premises occupied by him."  Upon application to the register the hearing was reopened and the books thus found produced.  They were of such character as, in the judgment of the register, to supply the deficiency in the bankrupt's accounts, and he changed his report.  The bankrupt was also examined before him, and explained his former statement generally thus:  That he was in delicate health and frequently sick; that he was greatly disturbed in mind by his embarrassments; and that at the time of his examination his memory had entirely failed as to the existence of the books afterwards found.

Now, was the statement of the bankrupt on the twenty-fifth of May, 1880, *wilfully* false?  Unless this satisfactorily appears, his discharge cannot be refused.  There are but two hypotheses to account for the bankrupt's conduct.  Either in the very wantonness of depravity he made a false statement to his own prejudice, or his statement was unintentionally untrue.  He had applied for his discharge, and the inquiry on which he was examined was as to whether he had complied with the law, and was entitled to be discharged.  He was bound to know, and must have known, that his failure to keep the books, about which he was asked, would necessarily preclude the allowance of his discharge. Is it within the range of probability, then, that he would wilfully and falsely deny the existence of a fact within his recollection at the time,

which he knew would defeat the object he was earnestly seeking to accomplish? Such an assumption is irrational, because it is utterly repugnant to any supposable motive of human action. Not only was the bankrupt without motive to swear to a falsehood, but he was drawn by the strongest of motives in the other direction. A statement of the simple truth was a decisive condition of his success, and it would require demonstrative proof to warrant the conclusion that he was laboring to defeat what it was conducive to his own interests to promote and accomplish. And this hypothesis is not without support in this, that the books produced are not suggested not to be what they purport to be, proper books of account honestly kept.

Although, then, I have some misgivings, I think the safest and most charitable explanation of the bankrupt's conduct is that he was unintentionally mistaken in his statement of May 25th, and therefore that his discharge ought not to be denied.

And so it is ordered that a decree for his discharge be entered in the usual form.