## BAUMAN v. FEIST et al.

(Circuit Court of Appeals, Eighth Circuit. February 25, 1901.)

### No. 1,511.

1. BANKRUPTCY—FALSE OATH OF BANKRUPT—IRRELEVANT TO ESTATE—DISCHARGE NOT BARRED.

Where a bankrupt testified under oath on examination before a referee that he had not stated to certain parties that he had an interest in a certain firm, which firm in fact never engaged in business, such oath not having been made in connection with the administration of the bankrupt's estate or an act affecting the estate, will not bar a discharge under Bankr. Act 1898, § 14b, subd. 1, providing that the court shall discharge a bankrupt unless he has committed an offense punishable by imprisonment, and section 29b, declaring that the bankrupt shall be imprisoned on conviction of knowingly and fraudulently making a false oath in relation to any proceeding in bankruptcy.

2. SAME—STATEMENT UNDER OATH—CONTRADICTION OF STATEMENT NOT UNDER OATH—FALSITY NOT PROVED THEREBY.

Where a bankrupt was alleged to have made a certain statement not under oath, and afterwards denied the same under oath, his statement under oath was not proved to be false by proof that he made the contradictory statement not under oath.

**3. SAME—MUTILATION OF ACCOUNT BOOKS.**

A bankrupt's discharge was not barred by the fact that the account books of a corporation, for which he was bookkeeper, and in which he had no interest, had been mutilated before they came into the possession of the corporation, under Bankr. Act 1898, § 14b, subd. 3, providing that the court shall not discharge a bankrupt who destroys or fails to keep books of account to conceal his true financial condition.

Appeal from the District Court of the United States for the Southern District of Iowa.

In Bankruptcy. From a judgment of the district court sustaining the objection of Max Feist and others, creditors, to a discharge of the bankrupt, the bankrupt appeals. Reversed.

Isaac Petersberger, for appellant.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. Creditors of William Bauman, bankrupt, filed in the district court the following specifications of objections to his discharge:

"(1) That the said Wm. Bauman has committed an offense punishable by imprisonment under the bankruptcy act, to wit, that the said Wm. Bauman knowingly and fraudulently testified under oath falsely upon examination before Referee John M. Helmick, February 6, 1900, that he did not state to W. B. Wiley, nor to W. H. Wilson, in the city of Davenport, at or about the time of leasing a certain storeroom of said W. B. Wiley, that the P. Bauman Co. was composed of himself and wife, and in stating that he had no interest in said company. (2) That the said Wm. Bauman, with fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, destroyed, concealed, and failed to keep books of account or records from which his true financial condition could be ascertained, and that he falsely and fraudulently altered his books and records so that his true financial condition could not be ascertained therefrom, by cutting pages therefrom, by altering and changing and mutilating the books and records of the companies in which he had an interest, to wit, P. Bauman Co. and of Millinery Emporium, so that his true financial condition could not be ascertained therefrom."

The specifications of objections were referred to John M. Helmick, referee in bankruptcy at Davenport, Iowa, to take the testimony, and report his findings of fact and conclusions of law thereon. In compliance with the order of reference, the referee reported the testimony taken by him, together with his findings of fact and conclusions of law, which were to the effect that neither of the specifications was sustained by the evidence, and that the bankrupt was entitled to his discharge. Exceptions were taken to the findings and conclusions of the referee, which were sustained by the district court, and the bankrupt denied a discharge, and thereupon the bankrupt brought the case into this court.

The bankrupt act (section 14b) provides that the court shall discharge the bankrupt "unless he has (1) committed an offense punishable by imprisonment as herein provided; or (2) with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained." The first specification rests on the first subdivision of the clause quoted. The burden rests on the objecting creditors to show that

the alleged false oath set out in the specification is made criminal, and punished by imprisonment. The twenty-ninth section ("b") declares that the bankrupt shall be punished by imprisonment "upon conviction of the offense of having knowingly and fraudulently made a false oath or account in, or in relation to, any proceeding in bankruptcy." Plainly, the false oath contemplated by this provision must be one material to the proceedings in bankruptcy. It must have some relation to the bankrupt's estate, or to the bankrupt's act affecting his estate, and must have been made knowingly and fraudulently. Aside from the usual and formal entries, the record before us contains nothing but the testimony of the witnesses and the referee's report. Neither in the testimony nor in the referee's report is there a word or suggestion tending to show that the alleged statement of the bankrupt to Wiley and Wilson had anything to do with the administration of his estate in bankruptcy, or was connected with it in the remotest degree. The alleged remark was made more than a year before the petitioner was adjudged a bankrupt. That is a long time to recollect with verbal accuracy a casual remark; and, in view of the fact that it clearly appears from the testimony that no such firm did in fact engage in business, its relevancy or materiality to the issue in the case is not perceived. It is claimed, however, that proof of this alleged statement establishes the fact that the bankrupt "made a false oath" when he testified that he had no interest in the firm of P. Bauman & Co. Assuming that the bankrupt made the statement, and waiving the question of its materiality, a complete answer to this contention is this: Where one makes a statement not under oath, and afterwards contradicts that statement under oath, his statement under oath is not proved to be false by proof that he made the contradictory statement not under oath. This would be the rule even if both statements were under oath. Dr. Wharton states the rule in these terms: "When the defendant has made two distinct statements under oath, one directly the reverse of the other, it is not enough to produce the one in evidence to prove the other to be false." 2 Whart. Cr. Law, § 1317; U. S. v. Mayer, Deady, 127, Fed. Cas. No. 15,753. Aside from the alleged statement of the bankrupt to Wilson and Wiley, there is no evidence in the record tending to show that he had any interest in the firm of P. Bauman & Co. The referee, who saw the witnesses, and heard them testify, and who was, therefore, in a much better position to judge of their knowledge and veracity than this court, found that this specification was not supported by the evidence; and on the face of the record before us that conclusion was amply warranted. The weight of the testimony is that he was not a member of that firm which was composed of the bankrupt's wife, Mrs. P. Bauman, and one Cash, and was dissolved almost immediately after its formation,—if, indeed, it was ever fully formed. It never did in fact engage in business a single day, but a private corporation was formed, called "The Millinery Emporium," the shareholders in which were P. Bauman (the bankrupt's wife), Charles A. Menter, and Mrs. A. Loper, each of whom owned one-third of the capital stock. There is no charge in this specification that the

bankrupt had any interest in the corporation thus formed, and that he swore falsely in relation thereto; and any consideration, therefore, of the question of fact whether he had an interest in that corporation would be irrelevant. What we have said disposes of the first specification.

The second specification charges that the bankrupt "falsely and fraudulently altered his books and records, so that his true financial condition could not be ascertained therefrom, by cutting pages therefrom, by altering and changing and mutilating the records of the companies in which he had an interest, to wit, P. Bauman Co. and of Millinery Emporium, so that his true financial condition could not be ascertained therefrom." In answer to this specification it is only necessary to say that there is no proof in the record that the bankrupt had any interest in the firm of P. Bauman & Co., if such a firm ever had an existence, and no proof that he was a shareholder or had any interest in the Millinery Emporium. There is proof that he acted as bookkeeper of the Millinery Emporium. The findings of the referee on this subject are:

"5. That no business was done under said firm name [P. Bauman & Co.], but the business was incorporated and opened at said premises under said lease under the name and style of 'The Millinery Emporium.' (6) That said bankrupt was bookkeeper for said corporation. (7) That said bankrupt had no interest in said corporation other than as an employé."

The referee further found that the books the bankrupt was charged with mutilating were not his books, but the books of the Millinery Emporium, a corporation in which he had no interest; and that the books used by this corporation were an old set of books, which had previously been used in some other business by some other person; and that the mutilation referred to consisted in cutting out the leaves of the book containing the old accounts of a business with which the corporation had no concern; and that they were not cut out with any fraudulent intent. These books were before the referee, and he had opportunities of judging of the truth of these statements that this court has not. These findings, which are sufficiently supported by the evidence, dispose of the second specification.

The judgment of the district court sustaining the exceptions to the referee's report and denying the bankrupt a discharge is reversed, and the cause is remanded, with instructions to enter an order confirming the referee's report, and granting the bankrupt a discharge. Ordered accordingly.