### In re RICE & REUBEN.

### In re HATCH.
### Nos. 17400, 17570.

District Court, D. Maine, S. D.
Sept. 18, 1930.

See, also, 43 F.(2d) 463.

In No. 17400:

Harry Judelshon, of Portland, Me., for bankrupt.

George E. Hill, of Portland, Me., for objecting creditors.

In No. 17570:

Frank P. Preti, of Portland, Me., for bankrupt.

A. E. Neal, of Portland, Me., for objecting creditors.

PETERS, District Judge.

Objections were made to the discharge of the bankrupts on the principal ground that they had, within twelve months preceding the filing of the petition, and with intent to hinder or defraud creditors, transferred some of their property.

The matter was referred to the referee as special master, who has sent up his findings of fact with the evidence before him and recommended that the discharge be denied on the ground of a violation by the bankrupts of section 14b(4), Bankruptcy Act (11 USCA § 32(b)(4), above referred to.

The case involves the disposition of an old automobile bought by the partnership with one or more other automobiles in 1926. The master has found that in 1929 the machine in question had become greatly out of repair and was of no great value. It was turned over to the wife of one of the partners, who turned it in in the purchase of a new machine, which she paid for on the installment plan out of her own money. In the trade for the new car she was allowed $350 for the old one. The master finds that "the actual value of the old car was much less, certainly not over one half the amount received in exchange." One of the bankrupts testified that the old car was not worth repairing and that he had been unable to use it even for the purpose of trading in.

It was undoubtedly of trifling value, and it is apparent that the allowance made the wife in the sale of a new car which was going out of manufacture was another way of making a discount on the dealer's commission.

At the time of the gift of the old automobile to the wife of one of the partners, their obligations exceeded their assets and they understood that to be the fact. It appears that they had been doing a business of about $50,000 a year. They were adjudicated bankrupts in September. In June, at the time of the transfer of the car, the evidence shows that they were still doing business, and they testified that they did not contemplate bankruptcy and did not give up hope of carrying on their business under better conditions until shortly before or about September.

The master has not found that there was any actual intent on the part of the bankrupts to hinder or defraud their creditors, and it is quite clear from the evidence that there was no such intent. From the facts, however, as above stated, the master finds that the gift of the automobile necessarily operated to hinder and defraud creditors within the meaning of section 14b(4) of the Bankruptcy Act, and recommended that the discharge be denied. Exceptions were taken to the master's report.

The master has found, as a matter of law, that where a transfer is such that the necessary effect of it is to hinder or defraud creditors the intent of the debtor will be presumed and that no evidence of intent can be received to change that presumption. This brings up the question whether constructive

fraud and intention to hinder, or actual fraud and actual intention, is the criterion to be used in deciding whether the bankrupt should be denied his discharge under the above section. I am of the opinion that the master erred in holding as a matter of law that even if the bankrupt's intent was entirely free from fraud and purpose to hinder or delay creditors, the debtor should not receive a discharge where the result of his act would be held to hinder, delay, or defraud creditors. These words are used in three different sections of the Bankruptcy Act, but not necessarily with the same meaning. The Circuit Court of Appeals in the Second Circuit, in the case of Feder v. Goetz, 264 F. 619, 624, in an opinion, the underlying principles of which I think are decisive in this case, said, referring to the words in section 14b (4): "They also appear in section 67e [11 USCA § 107, subd. e] in still another connection. But it does not follow that words used in one section of an act always mean the same thing when used in some other section of the act and in a different connection." The court went on to hold that the word "intent" in the section in question has a different meaning than in the third section. "There is no rule of construction which prevents us from holding that the word 'intent' in the expression 'with intent to hinder, delay or defraud creditors' means actual intent in the fourteenth section, even though it were well established that constructive intent is sufficient in the third section."

The history of the Bankruptcy Law and the attitude taken by the courts in recent times in the matter of discharge in bankruptcy show such an attitude of increasing consideration for an honest bankrupt that it would be a step backward to hold that a constructive intent to hinder or defraud is sufficient to prevent a discharge.

The court in Re Jacobs (C. C. A.) 241 F. 620, 624, states the well-settled rule as follows:

"One of the two great objects of a federal bankruptcy act is to release honest and insolvent debtors from the burdens of their debts. * * * The language giving the right to secure a discharge in bankruptcy ought, therefore, to be liberally construed. Indeed, when an application for a discharge is seasonably filed in a District Court, the judge of the court is 'bound to grant it, unless upon investigation' it appears that the bankrupt has 'committed one of the six offenses which are specified' in section 14b. Bluthenthal v. Jones, 208 U. S. 64, 66, 28 S. Ct. 192, 52 L. Ed. 390."

The purpose of section 14b is to preserve the discharge feature of the Bankruptcy Act from abuse and to deny its benefits to one who has shown himself unworthy of them in any of the ways specified in that section. If a purely constructive intent to hinder creditors is to prevent an honest bankrupt's discharge, one of the principal purposes of the law will be nullified.

The court in the Feder v. Goetz Case, supra, makes a definite distinction between constructive intent or presumed intent in relation to transfers that may be voided by creditors through a trustee, and the actual subsisting intent to defraud called for in section 14b. "The act of 1867 expressly declared voidable a debtor's transfers made with intent to defeat or delay the provisions of the act; but that had been the long-settled law, and voluntary general assignments had been long held to be acts of bankruptcy, and as such void, without inquiry into the debtor's intent, the intent being conclusively presumed. The act of 1898 contains no similar clause, but there is no doubt as to the general intent of the act. * * * The question whether the bankrupt should be denied his discharge because he had made such an assignment was not before the court and not decided." The court held that a voluntary general assignment with or without preference made by an insolvent debtor within the prescribed (then) four months is fraudulent and intended to hinder, delay, or defraud creditors within the meaning of section 67, but held that such a general assignment would not prevent the debtor's discharge, and quotes with approval Loveland on Bankruptcy (4th Ed. 1912) vol. 2, pars. 730, 731, referring to the provision now under consideration:

"This is substantially the phraseology used in the first act of bankruptcy. * * * This provision makes conveyances which by the common law and the statute of Elizabeth were held void because fraudulent, a ground for refusing a discharge to the bankrupt. A mere constructive fraud is not sufficient to defeat a discharge. The test is the presence or absence of real fraud."

The master rests his conclusions of law largely upon the case of In re Julius Brothers (C. C. A.) 217 F. 3, L. R. A. 1915C, 89, the language in which case in some respects, being general, would seem to bear out the suggestion that actual intent is not important; but the actual finding of the court in that case was that the transfer was not made with intent to hinder, delay, or defraud creditors, and for that reason did not bar the right

to a discharge, and that case was considered in Feder v. Goetz, supra, and its principle relied upon.

In the latter case there was a clearly drawn distinction between a constructive intent to defraud, which made void a conveyance or constituted an act of bankruptcy, and the same acts accompanied by an honest intent which do not come within the prohibition of the statute as to granting a discharge.

In Re William Tirschler & Co. (D. C.) 18 F.(2d) 365, in the Eastern District of New York, the court says: "Certainly a discharge should not be denied because before the petition was filed the bankrupt had paid to his wife the sum of $70 for living expenses." I take it the insignificance of the amount was a factor in showing that there was no actual fraudulent intent. A finding in the instant case that the automobile in question was not worth more than fifty to a hundred dollars would be quite justified.

In Re Warne (C. C.) 12 F. 431, one objection to the discharge of the bankrupt was that he was guilty of fraud in not delivering to his assignee certain personal property claimed by and in the possession of his wife and daughter. The court said:

"Although the title to the property, of the apparent owners may be voidable by the bankrupt's creditors, through the assignee, as their representative, the transactions in which it originates do not necessarily involve moral turpitude, which must characterize them to justify the denial of a discharge."

The above case and the case of Neal v. Clark, 95 U. S. 704, 709, 24 L. Ed. 586, were under the Bankruptcy Act of 1867, but the same principle would seem to apply. The Supreme Court, in the latter case, said:

"Applying these rules to this case, we remark, that, in the section of the law of 1867 which sets forth the classes of debts which are exempted from the operation of a discharge in bankruptcy, debts created by 'fraud' are associated directly with debts created by 'embezzlement.' Such association justifies, if it does not imperatively require, the conclusion that the 'fraud' referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality. Such a construction of the statute is consonant with equity, and consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency. A different construction would be inconsistent with the liberal spirit which pervades the entire bankrupt system."

So in the instant case, to hold that the Congress, when it provides explicitly that the court *shall discharge* the bankrupt unless he has transferred property with intent to hinder or defraud his creditors, means anything less than an actual, dishonest, intent, would be entirely inconsistent with the object of Congress, 'in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency."

The exceptions to the master's report are sustained, and the discharge may be granted.