## NEWMAN v. UNITED STATES. *
### No. 6650.

Circuit Court of Appeals, Ninth Circuit.
May 16, 1932.

George M. Naus, of San Francisco, Cal., for appellant.

*Rehearing denied June 24, 1932.

752

Geo. J. Hatfield, U. S. Atty., and I. M. Peckham and Francis J. Perry, Asst. U. S. Attys., all of San Francisco, Cal., for the United States.

Before WILBUR and SAWTELLE, Circuit Judges, and St. SURE, District Judge.

SAWTELLE, Circuit Judge.

June 22, 1929, appellant was adjudged a bankrupt on his voluntary petition. May 5, 1931, he was charged in several counts of an indictment with violations of section 29 of the National Bankruptcy Act (11 USCA § 52). He was convicted on the first and second counts of the indictment charging him, respectively, with making a false oath before the referee in bankruptcy and fraudulent concealment from the trustee in bankruptcy of property belonging to the bankrupt estate. A sentence of three years on each count, to run concurrently, was imposed. On this appeal appellant challenges the sufficiency of the evidence to support the allegation of materiality with respect to the false testimony charged in the first count, and the allegation of fraudulent concealment charged in the second count.

The first count of the indictment charged that appellant, having been sworn as a witness by the referee in bankruptcy, "did wilfully, knowingly and feloniously make a false oath in and in relation to a proceeding in bankruptcy" in the course of certain testimony given by him on that examination, which testimony was "then and there material to the said proceeding," and which is hereinafter set forth.

The evidence in support of the first count may be summarized as follows: After appellant was adjudicated a bankrupt, the bankruptcy proceeding was referred to a referee, and on July 24, 1929, a trustee was appointed to take over the bankrupt estate, consisting principally of a stock of furniture in the premises occupied by appellant as a wholesale furniture establishment or warehouse at 280 Natoma street, San Francisco. The value of the furniture as disclosed by appellant's schedule in bankruptcy was $18,000.

November 9, 1929, petitions in reclamation were filed with the referee in bankruptcy by Garrison Furniture Company, Klamer Factories, Inc., Rockford Republic Furniture Company, and Nichols & Stone, claiming that approximately $15,500 worth of the furniture in the possession of appellant was delivered to him by the claimants under consignment agreements. An inventory of the amounts respectively claimed was filed with the petitions, and, apparently, this inventory conformed to an inventory taken by the trustee upon his appointment.

Thereupon the trustee in bankruptcy entered into agreements with the several claimants, stipulating that they would be given possession of the furniture claimed by them pending a final determination of their petitions in reclamation, but subject to all rights, title, or interest of the trustee therein. These agreements provided that the claimants were to sell the property at a price commensurate with its value, subject to the approval of the trustee, and that, as each piece of furniture was disposed of, a copy of the invoice or bill of sale was to be furnished to the trustee, containing a description of the article sold, the name of the purchaser, and the sale price. The claimants immediately appointed appellant as their agent to take possession of the property and sell it pursuant to the agreements. At that time the property was still stored in the warehouse of appellant and remained there in his custody as agent of the claimants.

March 3, 1930, the trustee in bankruptcy caused another inventory to be made of the property, and this inventory disclosed that the value of the furniture then in appellant's warehouse was about $6,000, or a shortage of over $10,000 as compared with the inventory attached to the petitions in reclamation, although the trustee had received no report of any sale of property belonging to the bankrupt estate.

Thereupon, on March 7, 1930, the trustee filed a petition with the referee praying that the claimants be required to show cause why the trustee should not be relieved from the stipulations giving them possession of the property and the right to sell it as agreed therein, upon the ground that the terms of the stipulations had not been complied with by the claimants. The allegations and prayer of the petition are as follows:

"That your petitioner's attorneys were recently approached by the bankrupt above named and his attorney, R. G. Hunt, and said bankrupt, claiming to be acting for and on behalf of said petitioners in reclamation, advised your petitioner's attorneys that said property was obsolete furniture and unsaleable, but notwithstanding he was able to receive an offer of forty (40%) per cent. of the net valuation of said furniture, which said net valuation your petitioner was informed, and therefore alleges, was arrived at by the said Leslie B. Newman by first deducting the sum of 25% from the inventory price

attached to said stipulations heretofore filed in these proceedings;

"That your petitioner thereupon made inquiry to ascertain if the representations made by the said Leslie B. Newman were true as to the price and character of said furniture, and as a result of the inquiry made by your petitioner and his attorneys a firm offer was obtained wherein and whereby the sum of sixty (60%) per cent. of the value of the furniture as appearing on the inventory attached to the stipulations filed herein, without any deduction therefrom whatsoever, would be paid to said estate and be held for the account for whom it may concern;

"That your petitioner thereupon immediately drew a stipulation between the Trustee and said claimants, stipulating that said furniture could be sold for a sum not less than sixty (60%) per cent. as aforesaid, and the proceeds paid over to the Trustee in Bankruptcy, without any waiver or rights of the parties thereto, but simply for the purpose of converting said property into cash, a copy of said stipulation being attached hereto and made a part of this petition for all purposes; that when said stipulation was presented to petitioners' attorneys, Reuben G. Hunt was satisfied to have said stipulation entered into, but E. R. Hoerschner refused, failed, and still refuses and fails to sign said stipulation permitting the sale of said furniture at the price offered, to wit, 60% of the inventory price, has been lost to said estate;

"That your petitioner is informed and verily believes, and therefore alleges upon his information and belief that the bankrupt above named, said Leslie B. Newman, is interested in the purchase of said furniture, and for the purpose of impeding the sale thereof by your petitioner, continually makes representation that said property is obsolete and unsaleable;

"That your petitioner is informed and believes that such statements are knowingly false and are made for no other purpose than to interfere with the due administration of the bankrupt estate by your petitioner;

"That your petitioner further represents that such furniture which has not been heretofore disposed of is still in the possession of the bankrupt and is deteriorating in value, and that the above entitled estate, in the event the petitions in reclamation are denied, will suffer irreparable loss, and that it is necessary that either said estate be indemnified for such loss or that the petitioners show cause, if any they have, why said property should not be sold, converted into cash and the proceeds of said sale held for the account for whom it may concern;

"That your petitioner further represents that at the time of the entering into said stipulations between the said claimants, and your petitioner, any sales made of said property were to be forthwith reported to your petitioner; that your petitioner has never received any report of any sale of said property, and on the 3rd, 4th, and 5th days of March, 1930, your petitioner employed James Alexander, an Adjuster of the San Francisco Board of Trade, to check the property covered by the stipulations heretofore made by your petitioner and said claimants, and from said check it appears that property in excess of Ten Thousand ($10,000.00) Dollars has been removed from the premises wherein said property was located at the time of said stipulations and no report has been made to your petitioner of the sale, disposition, or removal thereof.

"Wherefore, your petitioner prays for an order to show cause, directed by Garrison Furniture Company, Klamer Factories, Inc., Rockford Republic Furniture Company and Nichols & Stone, their agents, attorneys, or employees to show cause, if any they have, before the above entitled Court, at a time and place to be hereafter set:

"1. Why said petitioners in reclamation should not be required to indemnify the above estate in such sum as may be fixed by the above entitled Court against any loss which the above estate may suffer by reason of the proceedings heretofore instituted by said petitioner in reclamation;

"2. Why the Trustee should not be relieved from his stipulations made and entered on the 7th day of November, 1929, and approved by the above entitled Court on the 8th day of November, 1929, upon the ground that the terms of said stipulations have not been complied with by petitioners, said claimants, and that the estate has suffered a loss thereby;

"3. Why said petitioners in reclamation, and each of them, should not account for and pay into the estate herein the value of any of the property described in said stipulations on file herein not found on the premises, 280 Natoma Street, San Francisco, Calif.;

"4. Why the Court should not make and enter its order directing that all of the remaining property on hand covered by said stipulations be sold for cash, at a price to be fixed and determined by the Court, and the proceeds of said sale be held impounded until

the determination of the rights of the parties thereto, and

"5. Why the Court should not make such further and other order as may be necessary and proper in the premises for the protection of the rights of the parties."

March 15, 1930, upon the return of the order to show cause, appellant was sworn as a witness and gave the following testimony on his examination by the attorney for the trustee:

"Q. I notice on the Garrison Company's invoices, you have properties inventoried at $2,177.95 dated March 3, 1930, and this is a carbon copy and you say on there, 'Sold at sixty cents on the dollar. Remit to A. W. Higgins, Russ Building, San Francisco, $1306.23.' Did you send the original invoice to Mr. Higgins [the trustee]? A. No, the delivery of these goods was not effected until about the 25th of February, some date like that, because his building was not ready.

"Q. Did you send a copy of that invoice to Mr. Higgins? A. This was reported in the general report.

"Q. On March 11th? A. March 11th.

"Q. When were the goods shipped from your place of business to Mr. Williams? A. I think the 24th, 25th or 26th, along about that date.

"Q. What month? A. February; it was the day before the end of the month.

"Q. Now, did you make any investigation of Mr. Williams' financial condition? A. Yes, sir.

"Q. How were the goods sold? A. Thirty days; I got in touch with him and I could have had the check by this time if we had known at the time who the money was to be paid to.

"Q. When did you find out who the money was to be paid to? A. Just in the last few days it was determined.

"Q. Who determined that? A. I don't know exactly who.

"Q. Who told you? A. My instruction was in the last few days to change the bills and make the money payable to Mr. Higgins.

"Q. Who told you that? A. I believe Mr. Hunt instructed me to that effect."

The first count of the indictment alleges "that each of said answers was then and there untrue as the defendant then and there at all times well knew in this, to wit: that the invoices therein referred to were wholly false and fictitious prepared by the defendant himself, was wilfully and knowingly made by defendant and was then and there material to the said proceeding."

At the conclusion of all the evidence introduced at the trial below, appellant moved for a directed verdict as to the first count "on the ground of the insufficiency of the evidence to prove the allegation that the testimony was 'then and there material to said proceeding,' and that the evidence was not only insufficient to prove the allegation of materiality, but, on the contrary, the evidence by the government affirmatively shows immateriality." The denial of this motion is challenged by the first assignment of error.

The bill of exceptions contains the following stipulation: "In the proposal and settlement of this bill of exceptions it was admitted and conceded on behalf of defendant that the evidence was sufficient to prove said assignment or allegation of falsity, and the only question to be raised upon the appeal herein was upon the claim of insufficiency of the evidence to prove the said allegation of materiality."

Appellant contends, however, that, inasmuch as the testimony of appellant, above quoted, related solely to a fictitious invoice to a Mr. Williams, it was not material on the hearing of the trustee's petition. The testimony was apparently given in connection with the issues raised by the petition of the trustee. This furniture was in appellant's possession as agent of the claimants thereof. It was, until otherwise adjudicated, an asset of the bankrupt estate. The testimony charged as insufficient to prove the allegation of materiality tends to show that appellant had disposed of a portion of the property of the bankrupt estate without making a report thereof to the trustee.

It has been said that "materiality" is a word to be measured by surrounding circumstances. The materiality of the testimony should be determined as of the time the testimony was given and by the matters then under investigation. As above stated, one of the conditions upon which the personal property was delivered to the several claimants was that they were to sell the property at a price commensurate with its value, subject to the approval of the trustee, and that as it was sold a copy of the invoice, containing a description of the property sold, the name of the purchaser, and the sale price, was to be furnished to the trustee. The claimants constituted appellant as their agent and authorized him to sell the property, pursuant to the stipulation referred to in the petition of the trustee.

It appears from the said bill of exceptions that, after the appellant took possession and custody of the said furniture, he made sales thereof to and including the time of the hearing on the order to show cause before the referee, but that up to the date of the filing of the petition no sale whatsoever of said furniture had been reported to the trustee in accordance with the terms of the said stipulation or otherwise.

We think it was material to the inquiry and the creditors were entitled to know what property had been sold, to whom it had been sold and delivered, the amount of the consideration paid therefor, the date of the delivery, and whether the invoices prepared by the defendant were false and fictitious or genuine. The sale and disposal of the property and the reports and the invoices thereof were matters relevant to the inquiry, and the testimony of the defendant was, therefore, both pertinent and material to the proceedings before the referee.

In Wheeler v. People, 63 Colo. 209, 165 P. 257, 258, the court defined testimony material to a charge of perjury as follows: "Perjured testimony to be material need not be directly to the main issue; if it has a tendency to prove any material fact in the chain of evidence, that makes it material. If it be substantially material it is sufficient. 30 Cyc. 1419. The term 'material matter' refers not only to the main fact which is the subject of inquiry, but also to any fact or circumstance which tends to corroborate or strengthen the proof adduced to establish the main fact. Thompson v. People, 26 Colo. 496, 59 P. 51; In re Franklin County, 5 Ohio Dec. 691; People v. Greenwell, 5 Utah, 112, 13 P. 89." See, also, Wharton on Criminal Law (10th Ed.) Vol. 2, § 1277.

The other assignment of error challenges the sufficiency of the evidence to support the second count of the indictment. The second count charged that appellant unlawfully, knowingly, and fraudulently concealed from the trustee in bankruptcy certain described property belonging to the bankrupt estate, consisting of twenty-five pieces of furniture. The undisputed evidence shows that on August 10, 1929, appellant caused certain furniture to be taken from the warehouse and removed to an apartment house in Manteca, Cal., and certain witnesses testified that they saw this furniture there in August, 1930. Appellant does not claim that the property so removed is not the property described in the second count of the indictment, nor is it denied that the property was surreptitiously removed after the appointment of the trustee.

It is urged, however, that the evidence is insufficient to prove concealment of the property from the trustee in bankruptcy, because in July, 1929, when the trustee was appointed, appellant turned over to him the keys to the warehouse where the furniture was stored and the trustee made an inventory of the property, and that therefore, while appellant might be charged with larceny from the trustee, he cannot be charged with concealment of assets of the bankrupt estate.

A like argument was made in Marcus v. United States (C. C. A. 3) 20 F.(2d) 454, 456, certiorari denied 275 U. S. 565, 48 S. Ct. 122, 72 L. Ed. 429, where the defendants were charged with concealing assets from their trustee in bankruptcy. They contended that, inasmuch as the property was in the possession of the receiver as an officer of the court, their offense, if any, was larceny or embezzlement. In holding to the contrary, the court said: "The defendants next contend that while their acts might be larceny or embezzlement, they did not constitute an offense against the bankruptcy law of the United States because the property which the indictment charged they concealed was in the hands of a receiver and therefore in the possession of the court. In legal contemplation the possession was that of the court but actually and physically the defendants gained possession of it, and as the evidence indicates, when so possessed, they sent it away secretively and thus concealed it."

Affirmed.