### In re GURNEY.

### GURNEY v. PUBLIC NAT. BANK & TRUST CO. OF NEW YORK.

### No. 326.

Circuit Court of Appeals, Second Circuit.
June 4, 1934.

O'Brien, Boardman, Hewitt, Memhard & Early, of New York City (Allen R. Memhard, of New York City, of counsel), for appellant.

Moses & Singer, of New York City (Henry B. Singer, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Howard Francis Gurney was adjudicated a bankrupt upon his voluntary petition filed May 19, 1932. In due time he applied for a discharge, to which one of his creditors filed specifications of objection. The matter was heard by a special master who reported that none of the specifications had been proved and that the discharge should be granted. On motion to confirm this report, the District Court sustained the creditor's fourth specification and ordered that the bankrupt's application for discharge be denied.

The specification which was sustained related to two transactions charged to be

transfers to the bankrupt's wife in fraud of creditors. On March 30, 1932, the sum of $2,060 was paid her by her son-in-law. Witnesses testified that this was the repayment of a $2,000 loan, with interest, which she had made to him during 1931. The money had been advanced by four checks of the bankrupt payable to the order of the son-in-law. If the sums represented by these checks were really gifts to the wife delivered at her request to the son-in-law, they were not fraudulent transfers, for during 1931 the bankrupt was not shown to have been insolvent; nor, in that event, was the repayment to the wife fraudulent. But if the loan to the son-in-law was really made by the bankrupt, as the creditor contends, then payment to the wife after the husband had become insolvent was plainly a fraud upon his creditors. It seems rather improbable that the checks were originally intended as gifts to the wife, for no reason is apparent why the husband should prefer to have her the lender rather than himself. Moreover, as the court below noted, the testimony consists chiefly of the witness' conclusions rather than a recital of what was said and done at the times when the checks were drawn. Nevertheless, the special master who saw and heard the witnesses was convinced of the truth of their story. It was uncontradicted, and, despite the somewhat improbable nature of the transaction, we are disposed to think that the District Court should have accepted the master's conclusion that Mrs. Gurney was the lender. The findings of a trier of fact are generally to be accepted. See Tilghman v. Proctor, 125 U. S. 136, 149, 8 S. Ct. 894, 31 L. Ed. 664; Crowell v. Benson, 285 U. S. 22, 51, 52 S. Ct. 285, 76 L. Ed. 598; In re Slocum, 22 F.(2d) 282, 285 (C. C. A. 2). Cf. In re Michel, 56 F.(2d) 15 (C. C. A. 2).

The other transaction sustained as a fraudulent transfer involves a payment of $3,800 made by the bankrupt to his wife on March 26, 1932. On the preceding day the Gurney Elevator Company, of which the bankrupt was the president and the principal stockholder, had been put under an equity receivership. Mr. Gurney had indorsed the corporation's notes in a large amount which were to fall due on March 28th and 29th. He knew that they would not be paid at maturity. His total indebtedness, including his liability as indorser, aggregated $147,000. He had no assets of substantial value except the stock in the Gurney Elevator Company, and that stock he scheduled on May 19, 1932, as worthless. It seems clear that he was actually insolvent on the day of the receivership, even though he testified to having then entertained some hope of working out a reorganization of the company. On the day following, that is, March 26th, he obtained from the company his salary check for the month of March in the sum of $4,840.06. He deposited this in his personal bank account and immediately drew out $3,800 in cash which he gave to his wife for "household expenses." The check stub record of her bank account indicates that he gave her $4,600 instead of $3,800, but it is unnecessary to consider whether in fact he gave the larger sum rather than the smaller one he admitted. In explaining his purpose, he testified:

"I was out of a job; it was the last pay I received and she had to have money to pay household expenses and I thought she was a better person to have it than I was."

While he says that he had not yet contemplated personal bankruptcy and in giving the money to his wife had no intent to hinder, delay, or defraud his creditors, he admitted that he realized the notes he had indorsed would not be paid when due and that his mind adverted to all his liabilities. Hence he must have realized that he was hopelessly unable to pay his large indebtedness of $147,000. Indeed, the only apparent reason why his wife was "a better person" to have the money than himself would seem to be the probability that his creditors would try to reach whatever assets he had. The bankrupt also offered evidence to prove the various withdrawals of money by Mrs. Gurney from her bank accounts. It appears that between March 26th and May 19th, in addition to paying a large number of small household bills, she paid some $1,600 for interest and taxes on their home, title to which was in her, and paid directly to her husband checks aggregating $900. She also spent $764.13 on her husband's insurance policy, which was exempt from his creditors, but, as this came out of the bank account created by the money received from the son-in-law, it may be disregarded. These large expenditures for purposes not beneficial to Mr. Gurney's creditors necessarily cast doubt upon the tendered explanation of why the $3,800 was given to his wife. The intent of the transfer could not have been merely to prefer creditors who had furnished household necessities.

Indeed, the appellant's argument appears to admit that the transfer may have been technically a fraudulent conveyance, but urges that actual as distinguished from constructive intent to hinder, delay, or defraud creditors must be found before a discharge can be denied on this ground. In re Rice & Reuben, 43 F.(2d) 378 (D. C. Me.). See Fe-

der v. Goetz, 264 F. 619, 624 (C. C. A. 2). Cf. In re Julius Bros., 217 F. 3, 7, L. R. A. 1915C, 89 (C. C. A. 2). A decision of this interesting question is not immediately necessary. It must not be overlooked that section 14 of the Bankruptcy Act, as amended by Act May 27, 1926, § 6 (11 USCA § 32), places upon the bankrupt the burden of proving that he has not committed the forbidden act, provided the objecting creditor has shown to the satisfaction of the court that there are reasonable grounds for believing that he has committed it. That burden the bankrupt did not carry; the District Judge was convinced that he "was attempting to salvage for himself a little bit out of the wreck at the expense of his creditors." In so deciding, the judge did not overrule any finding of fact by the master upon which the testimony was conflicting. He accepted the testimony of the bankrupt other than his bald denial of an intent to hinder his creditors, but drew therefrom a different inference as to the bankrupt's real intent in making the transfer. See In re Gottlieb, 262 F. 730, 733 (C. C. A. 2). This he was at liberty to do; when the matter is one of weighing on substantially undisputed facts the conclusions at which the master arrived, the District Judge may exercise greater freedom of review. In re M. & M. Manufacturing Co., 71 F.(2d) 140, and cases cited therein, handed down herewith. With respect to the $3,800 payment, we cannot say his conclusion was without support in the evidence.

Accordingly, the order is affirmed.