### WILLOUGHBY v. JAMISON.
#### No. 11366.

Circuit Court of Appeals, Eighth Circuit.

May 13, 1939.

Rehearing Denied June 12, 1939.

James W. Broaddus, of Kansas City, Mo. (McAllister, Humphrey, Pew & Broaddus, of Kansas City, Mo., on the brief), for appellant.

Inghram D. Hook, of Kansas City, Mo. (Harry L. Thomas and Hook & Thomas, all of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

THOMAS, Circuit Judge.

Having been adjudged bankrupt John Willoughby applied for a discharge. Allen R. Jamison, a creditor, filed objections. The matter was referred to a special master, who, after hearing, recommended that the petition for discharge be denied. Exceptions to the master's report were overruled and the report was confirmed. The bankrupt appeals.

Only one specification of objection to the discharge is presented for consideration on this appeal. The others were dismissed. The objection sustained was in substance that the bankrupt upon general examination before the referee at the first meeting of his creditors gave false testimony under oath in respect to the source from which his wife obtained funds with which she purchased a farm.

The master found, and it is not disputed, that at the first meeting of his creditors the bankrupt testified that his wife owned a farm of about 520 acres purchased at a cost of approximately $12,000 with money inherited by her from her mother's estate. The title stood in the joint names of the bankrupt and his wife, but it in fact belonged to her and was purchased with her money. The bankrupt wilfully and falsely testified that the purchase money was inherited from her mother when in truth she had received it from her friend Julia E. Taylor.

The master found, also, that the false testimony did not hurt the objecting creditor nor interfere with the orderly administration of the bankrupt's estate. The recommendation to deny a discharge was based upon the conclusion that the false answer was made with respect to a matter material to an issue in the bankruptcy proceeding.

The exception to the master's report is based upon the contention that the false statement was not material for the reason that it did not relate to the bankrupt's estate nor to any act or fact affecting the estate.

█ The general rule is that when an application for discharge is made by a bankrupt in the district court, the judge of that court is, by the terms of the statute, bound to grant it, unless upon investigation it appears that the bankrupt has committed one of the six offenses specified in the bankruptcy act. Bluthenthal v. Jones, 208 U.S. 64, 28 S.Ct. 192, 52 L.Ed. 390.

The particular offense charged here is defined in the Bankruptcy Act. Section 32(b) (1), 11 U.S.C.A. (Act of July 1, 1898, c. 541, § 14, 30 Stat. 550; Act of June 25, 1910, c. 412, § 6, 36 Stat. 839), provides that when a bankrupt files an application for discharge "The judge shall hear the application * * * and discharge the applicant unless he has (1) committed an offense punishable by imprisonment as herein provided." Section 52(b), 11 U.S.C.A. (Act of July 1, 1898, c. 541, § 29, 30 Stat. 554), provides that "A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently * * * (2) made a false oath or account in, or in relation to, any proceeding in bankruptcy."

█ The false oath to justify a denial of a discharge must be "knowingly and fraudulently" made, that is, it "must contain all the elements involved in perjury at common law, namely, an intentional untruth in a matter material to an issue which is itself material." Troeder v. Lorsch, 1 Cir., 150 F. 710, 713; 8 C.J.S., Bankruptcy, § 518, p. 1408; Bauman v. Feist, 8 Cir., 107 F. 83, 85; In re Chamberlain, D.C.N.Y., 180 F. 304; In re Mason, D.C.Fla., 8 F.2d 665. In Bauman v. Feist, supra, Judge Caldwell, speaking for this court, said: "Plainly, the false oath contemplated by this provision [section 52(b), supra] must be one material to the proceedings in bankruptcy. It must have some relation to the bankrupt's estate, or to the bankrupt's act affecting his estate, and must have been made knowingly and fraudulently." See, also, Hanover-Capital Trust Co. v. Meyer, 3 Cir., 57 F.2d 815.

The substance of the false oath is that the bankrupt's wife obtained the purchase money for her farm from her mother's estate when in fact she obtained it from Julia E. Taylor. Was this a material fact?

█ What facts are material to any inquiry must be determined by the nature of the right or liability asserted. 1 Chamberlayne, Modern Law of Evidence, § 16. Facts essential to support a judgment are material to the issue. 22 C.J. 164; American Process Co. v. Pensauken Brick Co., 78 N.J.L. 658, 75 A. 976. Evidence directed to proof of an immaterial issue is not material. Fry v. Provident Sav. L. Assur. Soc., Tenn. Ch.App., 38 S.W. 116. "Materiality", with reference to evidence, means the property of substantial importance as distinguished from formal requirement.

David Bradley Mfg. Co. v. Eagle Mfg. Co., 7 Cir., 57 F. 980, 986.

The issues upon the examination of a bankrupt at the first meeting of his creditors are not defined in pleadings. The scope and nature of the inquiry are found only in the statute. Section 7 of the Bankruptcy Act, 11 U.S.C.A. § 25, provides that "The bankrupt shall * * * when present at the first meeting of his creditors, and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate.

The objects of the inquiry are obviously to determine the property belonging to the estate in which creditors are interested and to aid the court in its administration and settlement. It is said in VII Remington on Bankruptcy, § 3289, p. 512, 4th ed., citing authorities, that "Mere false swearing, unless concerning matters that would naturally be material to the discovery of assets, the history of the bankrupt's business doings and relations, the existence and disposition of his property and debts, etc., would not be sufficient to bar a discharge."

The master in this instance found "that the false testimony of the bankrupt in regard to the source of the fund did not hurt the objector, nor interfere with the orderly administration of the bankrupt's estate"; but he concluded that it was material nevertheless. It is true that in a proper case the materiality of the false oath is not dependent upon injury to creditors. In re Goldman, 2 Cir., 37 F.2d 97. In the cited case it was held that a bankrupt son as an heir was bound to disclose the extent of his father's estate. In the instant case it was proper to inquire into the title of all property of the bankrupt's wife, but for the purpose only of determining whether the bankrupt had property concealed under her name. When it was established "to the satisfaction of all parties concerned", as the master found, that the bankrupt contributed none of the purchase money, it was immaterial where the fund was obtained. The "essential" and "important" fact was that the bankrupt did not furnish it and that he had no interest in the property. Further inquiry as to its source was collateral. This case is distinguishable from In re Slocum, 2 Cir., 22 F.2d 282; Watten-

maker v. United States, 3 Cir., 34 F.2d 741; Newman v. United States, 9 Cir., 58 F.2d 751; In re Parsons, 2 Cir., 88 F.2d 428; Ulmer v. United States, 6 Cir., 219 F. 641, and In re Perel, D.C.Tex., 51 F.2d 506, in that the inquiry did not pertain to the history of any of the bankrupt's business transactions and did not relate to property which had ever been a part of his estate.

Further, the evidence does not sustain the charge that the falsehood with reference to the source from which his wife obtained her money was "fraudulently" made. The burden was upon the objecting creditor to prove not only that the false testimony was knowingly made, but that it constituted an "offense punishable by imprisonment" Section 32(b) (1), 11 U.S.C.A.; In re Opava, D.C.Iowa, 235 F. 779, 783. There must be proof of actual fraud. In re Morrow, D.C.Cal., 97 F. 574. The falsehood must be intended to mislead the creditors as to some fact material for creditors to know. Otherwise it is not fraudulent within the meaning of the statute. In re Servel, D.C.Idaho, 30 F.2d 102, 104, and cases cited. We have shown supra that the false statement was immaterial. The evidence in the record does not tend to show that the bankrupt had a corrupt motive, or that he intended to conceal his property, or to obstruct justice in any way. The master found that "It is difficult to understand the bankrupt's motive in giving the false testimony when in fact the truth would not have hurt the bankrupt, nor helped the other side." But the burden was upon the objecting creditor to produce evidence from which a corrupt motive or intent could be inferred. The offense charged was one involving moral turpitude. In re Rice & Reuben, D.C.Maine, 43 F.2d 378; In re Warne, C.C., 12 F. 431; Neal v. Clark, 95 U.S. 704, 709, 24 L.Ed. 586; In re Garrity, 2 Cir., 247 F. 310. The record as a whole tends to show that the bankrupt's motive was to protect his wife's confidence in a case wherein she had promised Mrs. Taylor not to reveal the name of her benefactress. Aside from the knowingly false character of the testimony the evidence does not reveal a single element of fraud. See Chemical Bank v. Lyons, C.C., 137 F. 976.

Upon the record before him the master should have found that the first specification of objection was not sustained. The proof does not warrant the refusal of a discharge.

The order denying the application for discharge of the bankrupt is reversed and the court is instructed to grant a discharge.